**BARNARD KILGORE v. JOHN U. BIRD, as Circuit Judge of the Sixth Judicial Circuit of the State of Florida, in and for Pinellas County, and ELVA KILGORE, by her next friend and father, J. C. COLE.**

8 So. (2nd) 665                                                 En Banc

June 12, 1942

Harry L. Thompson, S. Whitehursts' Sons and Dickenson & Dickenson, for petitioner.

Anna A. Krivitsky and Howard E. Joseph, for respondent.

PER CURIAM:.

In action seeking in the Circuit Court to recover damages from a father for alleged alienation of his son's affection for his wife, numerous interrogatories were propounded by the plaintiff to the defendant under the statute. The trial court on motion struck some of the interrogatories and refused to strike other designated interrogatories.. Defendant applied to this Court for a writ of Prohibition seeking to have the unstricken interrogatories excluded from the cause. Prohibition was denied, but this Court per-

mitted the filing of an application for a constitutional writ of certiorari. Kilgore v. Bird, 149 Fla. 570, 6 So. (2nd) 541.

The declaration, filed October 30, 1938, charges the defendant, petitioner here, with alienating the affections of plaintiff's husband, petitioner's son, as follows:

"For that, whereas, the plaintiff was married to Chester W. Kilgore, a son of the defendant, Barnard Kilgore, on or about February, 1922, and lived with the said Chester W. Kilgore as man and wife until sometime in the latter part of 1938 with the exception of certain periods during their married life when the plaintiff's said husband would desert her and would in turn finally come home and resume their marital relationship; and that during all of said period of such married relationship and more particularly immediately prior to the last desertion by the said Chester W. Kilgore about two years ago the defendant contriving, wilfully, knowingly, wrongfully, unjustly, wickedly and maliciously intended to injure, prejudice and aggrieve the plaintiff in her enjoyment of the companionship, aid, society, comfort and protection derived from her aforesaid husband within the County of Pinellas, State of Florida, and divers other places, did wilfully destroy and alienate from the plaintiff the affection then and there had by the said Chester W. Kilgore, for the said plaintiff, who in nowise consented thereto; that about two years ago this coming December and prior thereto for some seventeen years at the said County of Pinellas in the State of Florida, the said Chester W. Kilgore was the husband of the plaintiff, and the defendant, said Barnard Kilgore, well know-

ing the same, about such time and on many divers other days and times prior to and subsequent thereto, did wrongfully, unlawfully, and maliciously, without any just cause or provocation thereof in order and for the purpose of inducing and procuring the said Chester W. Kilgore, her husband, to become alienated in feeling and affection for and dissatisfied with the plaintiff, his said wife, wickedly, wrongfully, knowingly and maliciously spoke and wrote concerning her, the said plaintiff, to her said husband, of divers other people for the purpose aforesaid, divers false, scandalous, defamatory words to and concerning her, the said plaintiff, in order to procure and cause the said Chester W. Kilgore to leave the State and stay away from his said wife; that she had not and would not properly take care of her said husband and look after his comforts and needs, and that she was not the proper person to be said wife, and that she was far beneath his station in life, not only in wealth, but socially and otherwise, and that she would not be able to bear him children and had married him solely for money he might reasonably be expected to receive from time to time during the lifetime of the defendant and by way of inheritance after his death, and to cause him to become alienated from her and refuse to allow him to live with her and cause him to abandon and desert the said plaintiff and banish her from the society, companionship and comfort from said husband and the right of support to her and her minor child, Virginia Kilgore, and in order to become alienated from her and to desert her and deprive her of the affection, comfort and society and companionship of her said husband, Chester W. Kilgore, the said defendant, Barnard Kilgore, promised and bribed and

requested the said Chester W. Kilgore with property, money and expectancy of inheritance under the Last Will and Testament of the defendant if he would abandon and desert this planitiff and deprive her of the comfort, society and affection and companionship of her said husband; and the plaintiff further avers that by reason of the false, scandalous, malicious and defamatory words spoken and circulated as aforesaid by the said Barnard Kilgore, the father of Chester W. Kilgore, of and concerning her, the plaintiff, and by reason of the promises requested by him to the said Chester W. Kilgore and causing same to be believed and relied on by the said Chester W. Kilgore, the husband of the plaintiff, for the purposes aforesaid, caused the said Chester W. Kilgore to become alienated and separated from and to this plaintiff; that the said Chester W. Kilgore upon the latter part of December A. D. 1938, against the will and consent of this plaintiff did desert and abandon and deprive her of the comfort, society, affection and companionship of her said husband, and then and there by reason of said conduct of said Barnard Kilgore, then and there, the father of the said Chester W. Kilgore, the latter against the plaintiff's will and without her consent and in compliance with the requests, orders and commands of the defendant, Barnard Kilgore, then and there, the said Chester W. Kilgore, did desert and abandon the plaintiff and depart from Pinellas County, Florida, and from thence by reason of the conduct, sayings, and doings of the said Barnard Kilgore and the furnishing of large sums of money to this said son, Chester W. Kilgore, for the purpose of transportation and living expenses while away from his said wife, the plaintiff herein, and encouraging his

said son, Chester W. Kilgore, to remarry and totally abandon this plaintiff and by furnishing money and the necessaries of life before and after such purported remarriage, without notice or divorce proceedings as between this plaintiff and the said Chester W. Kilgore, and by secreting and harboring said Chester W. Kilgore, from without this State and out of the jurisdiction of the Courts of this State, and by refusing to make the whereabouts of his said son known to this plaintiff, although he promised so to do upon a warrant being sworn out for divers offenses against the peace and dignity of the State of Florida perpetrated by the said Chester W. Kilgore, and by further refusing to advise this plaintiff as to the whereabouts of her said husband and refusing to permit him to return and cohabit with his lawful wife and by threatening to withhold financial aid and support to his said son, Chester W. Kilgore, and by further threats to disinherit him from any of the benefits that he might reasonably expect to receive from the estate of this defendant, and although the plaintiff appealed to the defendant to know the whereabouts of her said husband he refused and continues to refuse to make known his place of abode. And that this defendant by use of his great wealth, power and influence, and being a man of strong determined will power, easily coerced and threatened his said son, Chester W. Kilgore, who is a sick and weak person and easily influenced to stay away and abandon your petitioner by reason of the promises and premises herein.

"The plaintiff further avers that the said Chester W. Kilgore has not true cause to refuse to return to this plaintiff, his lawful wife, other than the false,

slanderous, wicked and malicious acts and doings of the defendant, Barnard Kilgore, the father of her said husband, Chester W. Kilgore. The plaintiff further avers that she is damaged by reason of the sayings, acts, and doings of the said Barnard Kilgore, the father of the said Chester W. Kilgore, in the sum of One Hundred Thousand Dollars.

"Wherefore, plaintiff brings this action and claims damages in the sum of One Hundred Thousand Dollars."

The petitioner filed a plea of not guilty.

Thereafter the interrogatories were filed under the statute, Section 4406 (2734) C.G.L. The following quoted interrogatories are the only ones here attacked, the others having been stricken:

"13. Did you not, upon divers occasions, prior to Chester's abandonment of his wife, Elva Kilgore, express yourself to the effect that it was a mistake on Chester's part to have ever married Elva Kilgore, and to have married into her family?

"14. Have you not threatened either orally or by written statement to send your son, Chester W. Kilgore, out of the State if he continued to live with his wife, Elva Kilgore?

"15. Did you not threaten your daughter-in-law, Elva Kilgore, by written communication, to send your son, Chester W. Kilgore, to South America?

"21. Did you not make the statement to Chester that you would cut off his inheritance by your last will and testament if he did not leave his wife, Elva Kilgore, and abide by your wishes in the matter?

"22. Did you not make similar statements, statements to the same effect, to other parties?

"23. Have you not make remarks to your son, Chester W. Kilgore, and others, derogatory to the character of Elva Kilgore?

"25. If such remarks were so made by you, did they have any basis in fact?

"27. Did you not make unkind and insulting remarks about your daughter-in-law, Elva Kilgore, to your son, Chester W. Kilgore, ever since they have been married? Such remarks as the following, and other statements to the same effect:.

"(a) That she was far beneath his station in life socially and/or wealth.

"(b) That she had not and would not properly take care of her husband, your son, Chester W. Kilgore.

"(c) That she had not and would not look after his comfort and needs.

"(d) That she was not the proper person to be his wife.

"(e) That she would not be able to bear any children to him.

"29. Did you not have knowledge that a warrant was obtained and was issued against your son, Chester W. Kilgore, for desertion and non-support; also that he was wanted by the law upon a charge of bigamy?

"30. Did you ever make any agreement with either Mrs. Elva Kilgore or any officer of the law, that you would produce Chester to answer these charges?

"37. Did you furnish your son, Chester W. Kilgore, with the money upon which he was enabled to depart from his home in Pinellas County?

"38. Have you not been furnishing your son, Chester W. Kilgore, money since his departure for the purpose of enabling him to stay away from Pinellas County?

"40. When did you last hear from your son, Chester W. Kilgore?

"41. Where did you hear from him?

"42. Where is he at present?

"53. If you did blame her, did you not convey this blame to your son, Chester W. Kilgore? (Blame for the troubles into which Chester W. Kilgore got.)

"73. Did you not send your attorney, Mr. James Whitehurst, to your daughter-in-law, Elva Kilgore, trying to persuade her to get a divorce from your son, Chester W. Kilgore?

"74. Did you not agree to pay the expenses of the divorce, if one was obtained by your daughter-in-law, Elva Kilgore, against your son, Chester W. Kilgore, and pay her some money if she got a divorce from him?"

The statutes are as follows:

"In all causes in any of the courts of this State, the plaintiff may, at any time, after filing declaration, or the defendant, after filing plea, deliver to the opposite party, or his attorney, interrogatories in writing upon any matter as to which discovery may be sought, and require such party, or in case of a body corporate, any of the officers of such body corporate, within ten days, to file in the court in which the cause is pending, written answers under oath to such interrogatories.

"Such answers shall be evidence against, but not for, the party making them.

"A failure to answer such interrogatories shall be deemed a contempt of court. (R.S. 1892, Sec. 1116.)" Section 4406 (2734) C.G.L. Section 58 Chapter 1096 Acts 1861.

"In cases of omisison without just cause to answer sufficiently such written interrogatories, the court may, at its discretion, direct an oral examination of the interrogated party as to such points as it may direct, either before the court, or a person to be appointed by the court, and the court may command the attendance of such party for the purpose of being orally examined as aforesaid, or the production of any writings or other documents to be mentioned in such rule or order, and may impose therein such terms as to such examination, and the costs of the application, and of the proceedings thereon and otherwise, as to it shall seem just.

"The deposition taken as aforesaid shall be reduced to writing and returned to and kept in the court in which the proceedings are pending.

"The person taking the examination shall, if required by either party, report to the court the absence or conduct of the person to be interrogated, and the court may make such order as to contempt or otherwise as it may see fit. (Ch. 1096, Feb. 8, 1861, Secs. 59, 60, 61.)" Sec. 4407 (2735) C.G.L.

The motion of the defendant was to strike all and severally the seventy-four interrogatories upon grounds:

"1. Said interrogatories seek exclusively for the case of the defendant.

"2. They are a merely fishing character.

"3. They are not reasonably relevant to the issue.

"4. They are unnecessary or useless.

"5. They are privileged upon the ground of public interest.

"6. They seek to prove the plaintiff's case by defendant's testimony.

"7. They are immaterial to the cause of action.

"8. They are not germane to the cause of action alleged in the declaration.

"9. It affirmatively appears from the defendant's plea that the same is not a sham plea.

"10. It affirmatively appears from said plea that issue was joined upon the very questions proposed in the several interrogatories.

"11. There is nothing in the record which shows that the plaintiff is entitled to propose the said interrogatories.

"12. That the said interrogatories alone, if read to the jury, would be prejudicial to the fair trial of this case by reason of the false assumption of facts therein stated."

A right of one party to propound interrogatories to be answered by the other party in a pending action at law is not a part of the common law in force in this State. The statute confers that right; and while there are no express limitations of the right contained in the statute, there are implied limitations to conserve rights of the party interrogated and to secure orderly judicial procedure without abuses, to the end that the right may serve to appropriately expedite judicial proceedings without causing illegality, injustice or confusion in trials. The plea in this case is not a "sham" plea. See Rhea v. Hackney, 117 Fla. 62, 157 So. 190.

If the right to interrogate the opposing party is not duly exercised in accordance with, and within the limitations of, the statute as interpreted by the courts, the interrogatories should be eliminated by due procedure as being unauthorized by controlling law.

This Court has held that:

"The purpose of the practice act of February 8, 1861, (Section 4406 [2734] C.G.L.) in authorizing the interrogatories to be propounded in an action at law, to the opposite party, and requiring such party, or in case of a body corporate, its officers, to answer the same in writing by affidavit, was to enable parties to obtain testimony without having to resort to tardy and expensive procedure of a bill of discovery in equity. (Headnote 2)

"The extent of the examination of an adverse party by interrogatories under the practice act of February 8, 1861, is subject to the same limitations as an examination by a bill of discovery in equity in aid of an action at law. The examination must be simply in support of the case or defense of the party propounding the interrogatories, and cannot extend to the whole case. (Headnote 3)

". . . the purpose of this statute was not to authorize either party to examine the opposite party or officer of the opposing corporation as to the whole case, or as to such opponent's case, but simply in support of the case or defense of the party propounding the interrogatories upon the principles governing and limiting bill of discovery in chancery." (text p. 63) Jacksonville, T. & K. W. Ry. Co. v. Peninsular L. T. & M. Co., 27 Fla. 1, 9 So. 661, 17 L.R.A. 33, 65; Wilson v. Webber, 8 Gray, 558.

It has also been held that though a large number of the interrogatories propounded might or might not be improper, as some of them properly relate to a particular defense, viz: whether a married woman's claim of property is fraudulent, such particular interrogatories may be sustained. Volusia County Bank v. Bigelow, 45 Fla. 638, 33 So. 704.

In this case a consideration of the various charges in the declaration with the nature, scope and terms of the large number of interrogatories (some being general or indefinite as to time and place or otherwise objectionable) indicate a seeking of possible information which might aid plaintiff, or an attempt "to examine the opposite party . . . as to the whole case, or as to the opponent's case" by interrogatories covering the various elements contained in the charges made against the defendant in the declaration. This would make the defendant a witness to testify as to the various elements charged as leading to an alleged injury, when such extensive matters should be presented in the trial before the court, it not appearing that the information sought is exclusively or peculiarly within the knowledge of the defendant. See Knight v. Empire Land Co., 55 Fla. 301, 45 So. 1025; May v. Whitehurst, 107 Fla. 174, 144 So. 326; Mutual Benefit Health & Accident Ass'n. v. Bunting, 133 Fla. 646, text p. 662, 183 So. 321; McKinnon v. Lewis, 73 Fla. 817, 74 So. 877; Crandall's Common Law Practice 1940 Supp. pp. 178, 180.

It does not appear that answers by the defendant to the interrogatories are necessary to the plaintiff's case, or that the evidence of material facts sought cannot readily be obtained from other sources in due course of orderly judicial examination of witnesses.

As the apparent purpose of the interrogatories is not in accord with the intendments of the statute, the interrogatories as formulated should not be allowed.

A writ of certiorari will be issued, and thereupon the order herein dated December 15, 1941, will be quashed, insofar as it overrules the motion to strike the interrogatories that had not been stricken by the Court. The cause is remanded for appropriate proceedings.

It is so ordered.

WHITFIELD, TERRELL, BUFORD, CHAPMAN, and ADAMS, JJ., concur.

BROWN, C. J., and THOMAS, J., dissent.

THOMAS, J., dissenting:

I dissent because of my view that certiorari is inappropriate for the purpose of testing a trial judge's ruling on interrogatories.