177 So.2d 724 (1965)
STATE of Florida, Appellant,
v.
Robert G. SHOUSE and Shouse Enterprises, Inc., a Corporation, Appellees.
No. 5361.
District Court of Appeal of Florida. Second District.
August 6, 1965.
*725 Frank Schaub, State Atty., Sarasota, for appellant.
Frank B. Watson, Jr., of Roberts, Watson, Taylor & Friday, Fort Myers, for appellees.
SMITH, Judge.
The state appeals an order quashing an information jointly charging the corporate defendant and the individual defendant with embezzlement in violation of § 84.07(3) of the Uniform Mechanics' Lien Law, Fla.Stats. 1961, F.S.A. The order appealed authorizes the state to file an amended information. We reverse the order quashing the information on the ground that an information otherwise charging a corporation and an individual with embezzlement substantially in the language of § 84.07(3), Fla.Stats. 1961, F.S.A., need not also specify that either defendant was acting as an "architect, landscape architect, engineer, contractor, subcontractor, or other person." We also grant certiorari and quash that part of the order appealed which requires the state to permit inspection and copying of sworn statements of prospective witnesses for the state.
*726 The embezzlement charge does not expressly allege that the corporate defendant, the individual defendant or either of them, was an "architect, landscape architect, engineer, contractor, subcontractor, or other person" as set forth in the statute. In all other respects the information alleges embezzlement substantially in the language of § 84.07(3) of the Uniform Mechanics' Lien Law, Fla.Stats. 1961, F.S.A., which provided, in part, as follows:
"Any architect, landscape architect, engineer, contractor, subcontractor, or other person[1] who, with intent to defraud, shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor or services performed on or materials furnished by his order for this specific improvement, while any amount for which he may be or become liable for such labor, services, or materials remains unpaid shall be guilty of embezzlement * * *."
Appellees contend, in effect, that this section applied only to an individual or entity which was capable of obtaining a lien under Chapter 84, Fla.Stats. 1961, F.S.A., such as a "contractor" or "sub-contractor" and that an officer or agent of a corporate contractor or subcontractor, for example, is immune from criminal liability even though he personally committed or expressly authorized the acts constituting the offense. We do not agree.
A corporation may be held criminally liable, e.g., for obtaining money by false pretenses, criminal conspiracy, grand larceny or similar offense, even though the acts constituting the crime are ultra vires and the offense involves a specific intent.[2] The fact that a corporation may be held criminally liable for embezzlement of property of a third person, does not, of itself, render immune from prosecution an officer or employee who committed or authorized the corporate acts constituting the offense.[3] We need not decide the nature or type of evidence required to sustain a conviction of a corporation or corporate officer under the act. We also need not decide whether the state is required to make an election must between a corporation and its officer, and, if so, at what stage such election must be made. The only question raised by the present appeal is whether a corporate officer or other agent of a corporate contractor, for example, is criminally liable under the act. Our decision in Fiske v. State, Fla.App. 1958, 106 So.2d 586, does not render such a person immune. In that case an information charged an individual defendant with being "a contractor as defined by Fla.Stats. 1955, 84.01 [F.S.A.]". However, the proofs disclosed that a corporation of which he was president was the actual contractor. Whether or not a conviction would have been sustainable on a proper information and proof that the defendant personally committed or authorized corporate acts constituting an embezzlement was neither raised nor decided. The subsequent decision of the Third District in Conger v. State, Fla.App. 1961, 130 So.2d 292, also is distinguishable. The information in that case charged an individual with "being a sub-contractor", but the proofs *727 disclosed the actual subcontractor was a corporation of which the defendant was president. We consider inapplicable to the present case, in which the corporation and its presiding officer have been jointly charged with embezzlement without specifying which, if either, was contractor or subcontractor, the following statements in the Conger case which seem to imply (1) that an individual cannot be charged "as an officer, with the personal performance of an act as the head of a corporation which gave rise to a violation of the law," (2) that he cannot be "made responsible for his act * * * in a representative capacity," and (3) that "he could not be charged personally for the actions which he committed as an officer of the corporation * * *." As stated by the Third District in an earlier decision, Silvestri v. State, Fla.App. 1960, 122 So.2d 502 at page 503:
"The crime defined in the statute while similar to embezzlement actually depends upon elements different from those constituting the crime of embezzlement as defined in Chapter 812, Fla. Stat., F.S.A. An analysis of the statute, the violation of which is charged here, reveals that the defendant must: 1) be an architect, landscape architect, engineer, contractor, subcontractor or other person (holding funds under similar duty to apply the same), 2) who, with intent to defraud, 3) shall use the proceeds of any payment made to him on account of improving certain real property, for any other purpose than to pay for labor or services performed or materials furnished by his order for this specific improvement, 4) while any amount for which he may be or become liable for such labor, services or materials remains unpaid." (Emphasis added.)
The evidence in the Silvestri case disclosed a misuse of funds with intent to defraud by a corporate contractor acting by and through its chief executive officer, who was not a party to the appeal. Evidence that the individual appellant endorsed a check as secretary and treasurer of the corporation was held insufficient to sustain a conviction of that defendant. The opinion in the Silvestri case strongly implies, and we expressly hold, that a corporate officer who, with intent to defraud, personally performed or authorized acts constituting embezzlement under § 84.07(3), supra, is individually liable even though the acts were performed in a representative capacity on behalf of a corporate contractor. Ordinarily, an indictment for embezzlement clearly should state the agency or particular fiduciary relation of the accused. 11 Fla.Jur., Embezzlement § 42 citing 18 Am. Jur., Embezzlement § 47. However, an information which alleges that a defendant performed the acts described in § 84.07(3), supra, clearly states the particular fiduciary relation involved in this type of embezzlement. Such an information also clearly states a prohibited breach of that fiduciary relation. Proof of acts so alleged establishes a prohibited misapplication of funds in violation of the statute whether the defendant was acting as a contractor, as an officer of a corporate contractor, or as some "other person" holding or controlling funds under a duty similar to that of a contractor. Since the exact status of the defendant is immaterial, it need not be pleaded.[4] Our holding as to the embezzlement count applies equally to the count charging conspiracy to commit embezzlement and conspiracy to commit perjury in violation of § 84.08, Fla.Stats. 1961, F.S.A.[5] However, *728 since the questions are not raised, we have not considered and expressly do not decide whether a corporation and one of its officers may be convicted of conspiring together and, if so, what evidence is required to sustain such a conviction.
The order appealed also directs the state to (1) disclose to the defendants the names of persons it intends to use as witnesses at the trial, (2) submit for inspection and copying by the defendants all sworn statements of such witnesses taken by the state, and (3) similarly submit all documents and legal papers which the state intends to use at the trial. This part of the order is not such an order as will support an appeal by the state. Section 924.07, Fla. Stats., F.S.A. An order quashing an information may be appealed by the state pursuant to the foregoing statute but such an order is not a final judgment by which this court may on appeal review all prior interlocutory orders. We do, however, have authority to entertain petitions by the state for common law certiorari in criminal proceedings. State v. Harris, Fla. 1962, 136 So.2d 633, 91 A.L.R.2d 1088. We therefore treat the state's assignments of error and points on appeal pertaining to the discovery portions of the order as the state's petition for certiorari and accordingly so limit the scope of our review. Girten v. Bouvier, Fla.App. 1963, 155 So.2d 745.
Section 906.29, Fla.Stats., F.S.A., relieves the state of any need to follow the custom of endorsing on informations and indictments the names of witnesses on whose evidence the same are based. Additionally, it authorizes the trial court on motion of the defendant to require the state to disclose the names of such witnesses. Although there is nothing in this statute which authorizes disclosure of the names of witnesses whom the state intends to use at the trial, the Supreme Court has held that an order requiring such a disclosure may be entered in the discretion of the trial judge. See Shields v. State, Fla. 1953, 64 So.2d 271. We therefore decline to quash that part of the order which directs the state to disclose to the defendants the names of persons it intends to use as witnesses at the trial.
Section 925.04, Fla.Stats., F.S.A., provides that when a crime has been committed and the evidence of the state shall relate, among other things, to documents, papers, or other tangible things, the court may order the state to produce and permit the inspection and copying of any designated papers or other tangible things. We construe that part of the order requiring the state to submit for inspection and copying by the defendants all documents and legal papers which the state intends to use at the trial to be substantially in accord with the statute and we decline to quash that part of the order.
The requirement that the state produce for inspection and copying by the defendants all sworn statements given by persons whom the state intends to use as witnesses at the trial stands on a different footing. Production of such statements, which is not authorized by statute, was sought as a matter of right on the ground that the Smith case[6] renders such statements the equivalent of transcripts of testimony given by witnesses at preliminary hearings, copies of which are required to be furnished to defendants free of cost by Section 902.11, Fla.Stats., F.S.A. The defendants also assume that the decision of the United States *729 Supreme Court in the Jencks case[7] is applicable in Florida and, further, that the doctrine of that case requires or authorizes production and inspection of such statements before trial.
The Smith case, supra, did not involve pre-trial inspection of statements given by prospective witnesses for the state. It involved the right to inspect a statement actually used by the state at the trial in an effort to impeach on cross examination a witness who had testified for the defense. While the opinion contains language which tends to support the proposition advanced by the defendant,[8] we think this language was unnecessary, that the case turned on the use made of the statement and that the decision does not render sworn statements by prospective witnesses for the state subject to production and inspection prior to trial as a matter of right or course.[9]
The Jencks case, supra, also involved disclosure at the trial after a witness had testified on direct examination for the Government. Moreover, it established standards for the administration of criminal justice in the federal courts, not state courts. Finally, as an aftermath of that decision and because some trial courts were acceding to extravagant demands for production far more sweeping than that required or authorized by the Jencks decision, Congress passed the so-called "Jencks Act"[10] which provides, among other things, that no statement of a government witness made to an agent of the Government and in the Government's possession shall be turned over to the defense until after the witness has testified on direct examination. See Palermo v. United States, 1959, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287.[11]
*730 Almost all state jurisdictions which have expressly adopted or impliedly recognized the Jencks doctrine postpone production and inspection until after the witness has testified for the state.[12] California appears to be the only state which has expanded the Jencks doctrine by requiring or sanctioning disclosure of such statements prior to trial,[13] and even in that state a blanket request for all statements is insufficient; the defendant must show some better cause for inspection than a mere desire for information.[14]
In 1963 the legislature made a defendant's statement or confession, previously not subject to inspection under the Williams case,[15] discoverable on motion made prior to trial.[16] However, neither the legislature nor the Supreme Court has seen fit to enact a statute or adopt a rule of court granting criminal defendants the additional right to inspect prior to trial statements given by prospective witnesses for the state. The common law on the subject and the constitutional and policy considerations involved have been fully explored and need not be repeated here.[17] Some of the authorities raise doubt in our minds whether, in the absence of a statute or rule of court, a trial court has authority, power or jurisdiction to grant or enforce relief of this kind in any case.[18] "We leave the question open, for if the power exists *731 at all, this case is not within it."[19] Assuming, arguendo, that statements of prosecution witnesses may be required to be produced in advance of testimony in exceptional cases or under unusual circumstances, no such showing was made here; there was only a naked, general demand for production and inspection as a matter of right and for purposes not disclosed by the record.[20] Since statements of witnesses are not ordinarily the proper subject of discovery, this is insufficient to justify any exception to the rule and warrants relief by certiorari.[21]
The order quashing the information is reversed; certiorari also is granted and that part of the order which requires the state to permit inspection and copying of all sworn statements of persons whom the state intends to use as witnesses at the trial is quashed.
ALLEN, C.J., and TROWBRIDGE, C.
PFEIFFER, Associate Judge, concur.
NOTES
[1] The corresponding section of the revised mechanics' lien law begins as follows: "Any person, firm, corporation or agent, officer or employee thereof * * *." Section 84.341(3), Fla.Stats. 1963, F.S.A. The revision also omits the phrase "by his order." Ibid.
[2] See State ex rel. Losey v. Willard, Fla. 1951, 54 So.2d 183.
[3] See Annot., Individual criminal responsibility of officer or employee for larceny or embezzlement, through corporate act, of property of third person, 33 A.L.R. 787 (1924): "There is no dissent in the decisions which have passed on the question, from the conclusion that an officer or employee of a corporation may be held criminally responsible for the embezzlement or larceny of the property of a third person through a corporate act, where the act was done by the individual officer, at his direction, or by his permission."
[4] Section 906.25, Fla.Stats., F.S.A.: "No * * * information shall be quashed * * * on account of any defect in the form of the * * * information * * * unless * * * the * * * information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense."
[5] The cited perjury section does not contain the descriptive words, "architect, landscape architect [etc.] * * *."

It begins: "Any person, firm or corporation who shall furnish to another person, firm or corporation, an affidavit * * *." See our opinion filed this date in the companion case of State v. Shouse, Fla.App. 1965, 177 So.2d 731. Portions of the conspiracy count involved in the instant appeal were quashed on the additional ground that the information failed to allege that the acts charged were done with intent to defraud. However, the record discloses that the count in question does, in fact, allege intent to defraud.
[6] Smith v. State, Fla. 1957, 95 So.2d 525.
[7] Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, holding that a defendant in a federal prosecution is entitled to inspect for possible use on cross examination a statement in the possession of the Government given by a prosecution witness touching events and activities as to which the witness has testified on direct examination for the Government.
[8] In his opinion in the Smith case, supra, Associate Justice Welch said (at page 527 of 95 So.2d): "This writer is of the opinion that the testimony of a witness given before a State Attorney (acting in his official capacity as State Attorney, vested by law with the power to compel the attendance of witnesses before him) falls in the same category with testimony taken before a committing magistrate * * *."
[9] Prior to the Smith case a majority of the Florida Supreme Court had held that a defendant was not entitled as a matter of right to inspect at the beginning of a trial written statements of prospective witnesses for the state even though he alleged on information and belief that "each of them made entirely different material statements of fact, one of which was contradictory of the other within itself, so that each witness gave contradictory statements as to what he saw and heard * * *." McAden v. State, 1945, 155 Fla. 523, 21 So.2d 33 (cert. denied, 1945, 326 U.S. 723, 66 S.Ct. 28, 90 L.Ed. 429). In a more recent case Chief Justice Drew, sitting as an associate judge of this court, distinguished the Smith decision and cited the McAden and other cases as establishing "the general rule in this jurisdiction" that a defendant ordinarily is not entitled "as a matter of right" to a transcript of statements of prosecution witnesses taken in the course of preparation for trial. Urga v. State, Fla.App. 1958, 104 So.2d 43. See also: Raulerson v. State, Fla. 1958, 102 So.2d 281 (statements of accomplices not on trial); Bedami v. State, Fla.App. 1959,

112 So.2d 284 (statements taken by solicitor to determine whether or not information should be filed); Russom v. State, Fla.App. 1958, 105 So.2d 380 (cert. dismissed, 1959, 109 So.2d 30) (pre-trial statements of prosecutrix and witnesses); Annot. 156 A.L.R. 345 (1945).
[10] 18 U.S.C.A. (Supp.) § 3500.
[11] Present Rule 16 of the Federal Rules of Criminal Procedure authorizes pre-trial inspection and copying of documents "obtained from or belonging to the defendant or obtained from others by seizure or by process." A proposed revision of Rule 16 extends coverage to unsigned statements by defendants but expressly exempts all statements by government witnesses or prospective government witnesses, except as provided by the "Jencks Act" supra at note 10. 1964 Proposed Amendments, 34 F.R.D. 411, 421. Trial courts in New Jersey are authorized by rule of court to permit inspection and copying of "written statements or confessions made by the defendant and designated * * * papers or documents obtained from others except written statements or confessions." State v. Cook, 1965, 43 N.J. 560, 206 A.2d 359, 361-362.
[12] E.g., State ex rel. Byrne v. Circuit Court of Dane County, 1962, 16 Wis.2d 197, 114 N.W.2d 114 (prohibiting trial court from compelling state to produce statements prior to trial); People v. Giles, Co.Ct. Erie Co., 1961, 31 Misc.2d 354, 220 N.Y.S.2d 905; People v. Mami, Co.Ct. Queens Co., 1961, 214 N.Y.S.2d 788; State v. Lavalle, 1960, 122 Vt. 75, 163 A.2d 856; State v. Johnson, 1958, 28 N.J. 133, 145 A.2d 313 (also involving a rule of court expressly excepting from pre-trial discovery statements by the defendant or statements from others); Hill v. State, Ct.Cr.App.Tex. 1958, 167 Tex.Cr. R. 229, 319 S.W.2d 318.
[13] See the review of California decisions in People v. Cooper, 1960, 53 Cal.2d 755, 3 Cal. Rptr. 148, 349 P.2d 964, 973. The decision originally expanding Jencks did not explain why inspection was being ordered before trial. Further, it equated statements given by others with statements given by a defendant. Funk v. Superior Court, 1959, 52 Cal.2d 423, 340 P.2d 593.
[14] People v. Cooper, note 12 supra; People v. Lindsay, Cal. App. 1964, 227 A.C.A. 521, 38 Cal. Rptr. 755. See also 2 Underhill's Criminal Evidence (5th ed.) § 501A (Supp.).
[15] Williams v. State, 1940, 143 Fla. 826, 197 So. 562 (holding that the words "other tangible things" in the law from which Section 925.04, Fla.Stats., F.S.A., supra, was derived, could not be construed or interpreted as including written confessions of the defendant).
[16] § 1, Ch. 63-263; Section 925.05, Fla. Stats., F.S.A. The act provides that upon motion "the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph written or recorded statements or confessions whether signed or unsigned by the defendant."
[17] People ex rel. Lemon v. Supreme Court, 1927, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200 (Cardozo, C.J.); State v. Tune, 1953, 13 N.J. 203, 98 A.2d 881 (Vanderbilt, C.J.). See also: Annot., Right of accused to inspection or disclosure of evidence in possession of prosecution, 52 A.L.R. 207 (1928); 23 C.J.S. Criminal Law § 955(2)b; 2 Wharton's Criminal Evidence (12th ed.) § 671; 6 Wigmore on Evidence (3d ed.) § 1850.
[18] "No broad right of discovery exists, however, in criminal cases; the common law recognized no right of discovery in such cases, and it has been held that unless introduced by appropriate legislation, the doctrine of discovery is a complete and utter stranger to criminal procedure." 23 C.J.S. Criminal Law § 955 (1). This court cited the foregoing quotation in State v. Lampp, Fla.App. 1963, 155 So.2d 10 (granting certiorari and quashing order directing clerk to issue subpoenas authorizing counsel for defendant, in effect, to take pre-trial depositions of state's witnesses). See also Kardy v. Shook, 1965, 237 Md. 524, 207 A.2d 83 (dismissing state's appeal but expressing Court of Appeal's view that trial court had no inherent power to grant defendant right to take deposition of state's witnesses).
[19] Cardozo, C.J., in People ex rel. Lemon v. Supreme Court, supra at note 17. In holding that a proper case had been for an order of prohibition Chief Justice Cardozo also said: "The documents to be exhibited to this defendant are not evidence for any one. They are merely mnemonic instruments whereby the prosecutor may be better able to elicit evidence hereafter. A mandate giving them publicity is something more than error in the exercise of power. It is an assumption of power where none has been confided. * * *" See also State v. McGee, 1962, 91 Ariz. 101, 370 P.2d 261, 264 (no abuse of discretion shown in order denying inspection) ("* * * we do not at this time decide the question whether the defendant has a right to inspect and copy the statements of other witnesses even under exceptional circumstances."); People v. Maranian, 1960, 359 Mich. 361, 102 N.W.2d 568, 571-572 (semble): "Discovery will be ordered in all criminal cases, when, in the sound discretion of the trial judge, the thing to be inspected is admissible in evidence and a failure of justice may result from its suppression." (Emphasis added.) State v. Tippet, 1927, 317 Mo. 319, 296 S.W. 132 (cited in Annot., 52 A.L.R. 207, 212, for the minority view that criminal defendants are entitled to inspect written statements of prospective witnesses) was expressly overruled. See State ex rel. Page v. Terte, 1930, 324 Mo. 925, 25 S.W.2d 459.
[20] In Seaboard Air Line R. Co. v. Timmons, Fla. 1952, 61 So.2d 426, the Supreme Court characterized written statements of witnesses as "work product" not properly subject to discovery except under "unusual" circumstances. See also, State v. Tune, supra at note 17 (also characterizing such statements as "work product"): "Such documents can only in the most exceptional cases and in the most unusual circumstances be turned over to the defendant for inspection."
[21] Seaboard Air Line R. Co. v. Timmons, supra note 20. Cf. Kilgore v. Bird, 1942, 150 Fla. 702, 8 So.2d 665; State v. Lampp, supra note 18 ("The order in question departs so far from the established practice and the public policy of the State that certiorari is granted and the subject order is quashed.")