227 So.2d 550 (1969)
STATE of Florida, Petitioner,
v.
William Belmont GILLESPIE, Respondent.
No. 69-243.
District Court of Appeal of Florida. Second District.
October 31, 1969.
*552 Joseph G. Spicola, Jr., State's Attorney, and John S. Burton, Asst. State's Atty., Tampa, for petitioner.
Peter J.T. Taylor, of Goldburg, Putney, Taylor & Hampton, Tampa, for respondent.
McNULTY, Judge.
The State of Florida petitions for common law certiorari to review an order of the trial court compelling a pre-trial in camera inspection of "* * * all records, files and evidence including Grand Jury testimony relative to the case of the State of Florida v. William Belmont Gillespie, * * *". This case is pending under an indictment charging the defendant Gillespie with murder in the first degree. In entering the order under review the trial judge specifically found that he was required to make such in camera inspection on the authority of Williams v. Dutton.[1]
Respondent initially suggests that common law certiorari is inappropriate at this stage of the proceedings. We disagree. This court has consistently entertained certiorari in this type case when the order sought to be reviewed is shown to be, at least prima facie, a substantial departure from the essential requirements of law, or when the state is at the peril of prejudice.[2] We again do so now.
The motion of the respondent Gillespie, made in the criminal proceedings herein and upon which the trial judge entered the order under review, did not pray for an in camera inspection, but rather prayed, without a predicate or a showing of cause, for an order compelling the state to disclose or produce for inspection and copying by the respondent-defendant "all evidence in the possession and control of the [s]tate * * * [which] * * * may be favorable to defendant * * * or [which] could reasonably weaken or affect any evidence proposed to be introduced against defendant, * * * without regard to whether such evidence * * * is * * * admissible at the trial * * *". The motion then listed eleven non-specific items of "evidence" which were to be included in the information sought to be disclosed. These items ran the entire gamut of investigatory weaponry from generally described items of purest work product of the prosecution (e.g., unidentified "memoranda or summaries" which were or may have been prepared or used by investigating officers) to the judicial inquisitorial processes of the Grand Jury investigation. The trial judge did not grant the relief prayed for in the motion but instead, as noted, ordered a blanket, all-encompassing in camera inspection believing it to be compelled by Williams v. Dutton, supra.
*553 Ever since Brady v. Maryland,[3] and through the cases which followed,[4] the problems inherent in pre-trial discovery in criminal cases have been made apparent with accelerating frequency; and there has been we sense, considerable resulting confusion. We think this case affords an opportunity to review the entire picture of such discovery in some depth, and to bring some of the areas of confusion into clearer focus within their proper perspective.
At the outset, we observe that pre-trial discovery in criminal cases in its broad sense is one thing, and the extent to which the prosecution may be compelled to cooperate therein is quite another. In this era of enlightened jurisprudence, the overall concept of discovery has generally been met with approval,[5] but the aspect of compelled prosecution cooperation has furnished the arena for respected differences of opinion and for much of the apparent confusion. Accordingly, it is this latter aspect of pre-trial discovery to which we will essentially address our concern herein; that is to say, the extent to which the prosecution may be compelled to cooperate in the pre-trial discovery efforts of a defendant in a criminal case.

I

A.
In the first place we observe that neither Brady nor any other authority cited or known to this court, has suggested that the adversary nature of criminal proceedings has been abrogated. The adversary system is still the core of our Anglo-American concept of the truth-finding process;[6] and constitutional concern demands only that such process be fair. We find, therefore, that the underlying principle supporting the whole idea of criminal pre-trial discovery, as gleaned from the cases[7] and well-reasoned commentaries,[8] is fairness. But no intelligent concept of fairness has ever been advanced which would require one side of a judicial controversy to prepare the case for his adversary, or to furnish such adversary with evidence favorable to him when such evidence is otherwise reasonably available; and the unique aspects of the criminal law do not require that such a concept should be any more appropriate in a criminal case than in any other.
Furthermore, none of the cases as we read them is authority for claiming a constitutional right to pre-trial discovery of evidence in the hands of the prosecution.[9] They merely hold, and we would agree, that denial of timely discovery from the prosecution of otherwise unascertainable evidence favorable to the accused, may affect the fairness of the trial itself to such a degree that one convicted at such trial would be denied due process. But it must be remembered that it is after the trial that the proceedings are scrutinized *554 and measured against the standards of fairness; and any infringement of a claimed right of an accused prior to trial, as far as the criminal proceedings are concerned, is merely in the nature of an "inchoate" injury which does not ripen into a fatal departure from constitutional safeguards until it leads, or materially contributes, to a conviction at trial. The situation is akin, it may be said, to one yelling "Ouch!", before he's hurt. We reaffirm first then, that an accused has no constitutional right to pre-trial discovery.

B.
Secondly, we note that in all the cases from which pre-trial discovery has evolved, it appears that the prosecution took unfair advantage of the accused by either knowingly presenting false or illegally obtained evidence against him in some manner, and without disclosure thereof, or by unfairly suppressing exculpatory or favorable evidence.[10] Therefore, common to all these cases is the fact that the evidence in question was otherwise unavailable to the accused.
In Brady for instance, a murder case, the defendant had requested copies of all extra-judicial statements given to the prosecution by his codefendant. Several of such statements were in fact shown to him, but the prosecution withheld one of the codefendant's statements in which the codefendant admitted to the actual homicide. Brady did not, and could not, find out about this until after his conviction and sentence to death had been affirmed on appeal. In a post-conviction relief procedure, the Maryland Court of Appeals granted a new trial on the question of punishment only, and the United States Supreme Court affirmed saying:
"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of prosecution * * *".
It is thus patent in that case that a fatal unfairness resulted from the suppression itself when the defendant did all he could to avail himself of the evidence suppressed.
Another example is Williams v. Dutton, supra, on which the trial court specifically relied in entering the order now under review. In that case we again find that the evidence sought from the prosecution was among that which was otherwise unavailable. The case had previously been through the state courts of Georgia,[11] and after conviction the denial of a pre-trial motion for discovery was urged as error to the Supreme Court of that state. That court reaffirmed the rule in Georgia that a defendant was not entitled to pre-trial discovery since "[t]here is no statute or rule of procedure of force in [Georgia] which requires a solicitor general or other prosecuting officer to make his evidence, documentary or otherwise, available to the accused, or his counsel before trial * * *".[12] In reliance on Brady, supra, the Circuit Court of Appeals in a federal habeas corpus proceeding, overruled the Georgia court (although not expressly on the question of pre-trial discovery as we shall discuss later) and held that the evidence sought should at least (after conviction) be examined by the state court in camera to determine whether favorable evidence "material either to guilt or punishment" had been suppressed. If so, it was said, then Brady required a new trial on one or both of those issues found to have been compromised by such suppression. The point made here is that the evidence sought in Dutton was otherwise unavailable to the accused.
*555 We conclude from the foregoing therefore, that any mandate deducible from the federal decisions on the question of what the prosecution is required to disclose to an accused in a criminal case, concerns itself in the first instance only with those matters of which the accused cannot, by reasonable diligence, otherwise avail himself. Whatever effect such mandate may have had on the courts of Florida prior to the effective date of the Criminal Rules of Procedure[13] need not be considered here. But insofar as it would exert any discipline on our criminal proceedings since the adoption of those rules, we are talking about a very narrow class of cases; that is to say, our courts need only be now concerned with those cases in which the evidence sought to be discovered cannot otherwise be discovered under the rules. By taking copious and diligent advantage of these rules a defendant in a criminal case in Florida can now avail himself of everything reasonably relevant and material to the case save Grand Jury proceedings (which we will discuss later), and that class of evidence, contemplated by Brady, which the prosecution would knowingly intentionally suppress.

C.
With regard to this latter class of evidence, we pause here to comment that Brady is by no means clear as to what can be done if, despite all, the prosecution in fact suppresses such evidence when the accused is unaware of its existence. Indeed, a prosecutor so devoid of scruples as to suppress exculpatory or favorable evidence exclusively within his knowledge or possession, notwithstanding the mandate in Brady and the express prohibitions of Canon 5,[14] would not be loathe to destroy such evidence in the face of a generalized court order compelling either disclosure or inspection of "favorable" evidence.
Realistically then, the good faith of the prosecution cannot be discounted. Fortunately the overwhelming majority of prosecuting officers are motivated by high standards, and it is essential to our system that trust be reposed in them. The relatively few instances in which one of them may have acted in bad faith or on poor judgment should not tempt us to retreat from the rule that their official acts are entitled to a presumption of regularity and propriety. Insofar as unfairly suppressing evidence favorable to an accused is concerned, we can only direct that they not indulge in such practices, demand that they disclose such evidence at the appropriate time and then place our trust in their desire to comply with the high standards expected of them.[15] Such officials should always keep in mind that pursuant to the mandate in Brady a conviction resulting from a prosecution in which exculpatory or favorable evidence is unfairly suppressed is void, and will be subsequently set aside if such suppression is ultimately discovered. In such case, a prosecutor may be "cutting off his nose to spite his face," because discovery of such suppression may come too late to again successfully prosecute the accused. We repose confidence therefore, in the two safeguards which are patent, i.e., the high integrity of the overwhelming majority of prosecuting officers, and the danger to overzealous prosecutors of defeating their own ends; and we find no compelling need to authorize a "fishing *556 expedition" by either the accused or the court on the mere chance that the prosecution may be derelict in the premises.

II
Next, we consider the question of just what is meant by "favorable evidence" in the context of Brady and, ancillary thereto, who should have the right to make such determination. By using the phrase "favorable evidence" rather than "exculpatory evidence", the Brady court must have meant to include more than that which clearly and unequivocally points to innocence or mitigation. On the other hand, almost any evidence in the hands of a skilled defense attorney can be used to advantage. Keeping in mind therefore, that in this part of our discussion we are concerned only with such evidence in the exclusive knowledge and possession of the prosecution, and also being mindful of the adversary nature of the proceedings which are still in the pre-trial setting, we conclude that the right to make the critical determination in the first instance belongs to the prosecution. Such right is subject always however, to a corresponding duty to disclose pursuant to the mandate of Brady and Canon 5, supra.
But such duty to disclose does not require the prosecution, on demand, to meticulously "comb its files for bits and pieces of evidence which conceivably could be favorable to the defense."[16] It does require however, that the prosecution be ever alert to its true responsibility in the premises. The bounds of this responsibility are difficult to accurately proscribe, but the best guidelines we have found were laid down by the Maryland court in State v. Giles,[17] and were subsequently cited with approval by Mr. Justice Brennan in Giles v. Maryland:[18]
"As we see it, the prosecution should disclose to the defense such information as it has that may reasonably be considered admissible and useful to the defense in the sense that it is probably material and exculpatory, and where there is doubt as to what is admissible and useful for that purpose, the trial court should decide whether or not a duty to disclose exists."
Thus, given the initial duty to disclose, the "favorable evidence" we are talking about is really that evidence which a reasonably skilled prosecutor should know could be fairly and probably used to advantage by the accused on the issues of guilt or punishment.
We think it important to interpose here that in our view it makes no difference whether the evidence involved is the fruition of "work product" of the prosecution or not. No case after Brady has been cited to us, and we are aware of none, which turns on the "work product" rule. But our view taken here of the entire rationale of Brady is that the "favorable evidence" spoken of must necessarily include, if not indeed exclusively concern itself with, work product of the prosecution in the broadest sense, since the evidence involved is that known to, and ascertained by, the prosecution but unavailable to the accused. However, we must remember that Brady is concerned with evidence, i.e., matters or things which competently tend to prove or disprove a material fact in issue. Of a different genre of "work product" are "reports" or "summaries" made by agents of the prosecution in which, for example, a witness's testimony is condensed (as distinguished from "recorded" or "quoted", both of which may constitute "evidence"), or in which evidence and testimony are evaluated and compiled for investigation purposes or for trial briefs or other use at trial; or memoranda of strategy, or statements or documents used as investigatory *557 techniques to procure or elicit evidence.[19] These items are examples of "work product" in its purest and narrowest sense, to which the accused is not ordinarily entitled,[20] except perhaps as may be required under the Jencks rule, i.e., made available to the accused at trial for purposes of effective cross-examination within the scope of the right of confrontation.[21] But evidence, as such, falls within the mandate of Brady if it is "favorable", regardless of how, or by what effort, the prosecution learned of it.
We note too, that the quoted portion of Giles, supra, further suggests that the right to make the determination as to the favorable nature vel non of evidence in the exclusive possession of the prosecution, may ultimately devolve upon the trial judge. We suggest, however, that this can only be by a subsequent in camera inspection, and even then only if such inspection is otherwise proper as we shall explore momentarily. But initially the right, and corresponding duty, rests with the prosecution.

III
We now consider the role of in camera inspection in criminal pre-trial discovery. To begin with, we think it was well stated in United States v. Frazier,[22] that:
"The obligation upon the [prosecution] not to suppress favorable evidence [citing Brady] and affirmatively to disclose [citing Barbee, supra,] does not make it incumbent upon the trial judge to rummage through the file on behalf of the defendant. * * *"
Indeed, there being no constitutional right of an accused to pretrial discovery in the first place, there can be no corresponding duty on the part of the trial judge to compel it.[23]
But it is, of course, the paramount duty of the trial judge to conduct the trial itself fairly, expeditiously and in such a manner that reversible or fundamental error will not occur. Accordingly, he is vested with broad discretion to devise procedural safeguards against such error.[24]
One such procedural device is the in camera inspection. Not unlike other discretionary powers however, the discretion to compel in camera inspection is not unbridled and should be exercised with judicial restraint. While such inspection can be a useful and sometimes indispensable tool in the administration of criminal justice, it is fraught with hazards which can knock such tool out of square with fairness and expediency.
First of all, it can become a ponderous, time-consuming task if utilized in every case merely on demand. The burden on the trial judge would be intolerable, particularly in this advanced age of criminal jurisprudence in which, because of manifold although necessary procedural safeguards which have been thus far devised, the amount of time consumed in the administration thereof has increased incredibly. Secondly, it is not unreasonable to expect, indeed it is likely, that a prosecutor's files will contain information concerning an accused which is extremely prejudicial or inflammatory, yet probably inadmissible at trial; e.g., the past criminal record of the accused, or his ill repute among law enforcement agencies. Knowledge of these matters on the part of the trial judge could seriously impair, however *558 unintentionally, judicial impartiality. Thirdly, if the trial judge were to examine certain evidence he, himself, could become a link in the chain of possession thereof. The undoing of this circumstance, if it were to become necessary as well it might, could surely tax the bounds of discretionary procedural ingenuity.
These pitfalls are not insurmountable however, and would appear inconsequential in the face of fundamental "unfairness" which might otherwise result but for a proper in camera inspection. The question is, when is it proper? Or to put it another way, when and how should the trial judge be made aware that the ends of justice require such an inspection? This brings us to the necessity vel non of a predicate for such inspection.
If, initially, the accused or the court are without any knowledge, or grounds to believe the existence, of possible "favorable evidence" in the hands of the prosecution, the court must rely, as has been noted, on the prosecution itself. A similar pre-trial observation was made by the district court in United States v. Wolfson:[25]
"Without any evidence before it, without knowing what the evidence may be, without being able to assess the impact of the Government's evidence, and without any knowledge of what may be in the prosecutor's possession, the Court must rest, at least at this stage of the proceedings, upon the Government's awareness of the warning implicit in the Brady v. State of Maryland decision."
Therefore, in such a case, the prosecution upon mere demand should make a disclosure directly to the accused, if patently there is in fact "favorable evidence", or request the court to decide when there is a doubt.[26]
On the other hand, if the accused is aware of withheld favorable evidence he should be required to specifically set it forth in a demand for disclosure. If the prosecution does not accede to the demand the court should, upon timely application, order its disclosure either directly to the accused if its "favorable" nature is obvious, or, again, in camera for the court's evaluation if there is doubt.
Still a third situation must be considered. That is, a case wherein the accused is aware, not of the existence of undisclosed "favorable evidence" per se, but of facts or circumstances from which it may be inferred that such evidence is "likely" to exist. In Lee v. United States,[27] for example, the accused demonstrated that the prosecution failed to produce and refused to name the eye witness in question. The court first acknowledged the necessity of a predicate for compelling disclosure of suppressed evidence, and then concluded:[28]
"[T]he defendant's initial burden of showing the nature of the suppressed testimony has been met by inference. It is then incumbent upon the [prosecution] to rebut the prima facie case of the defendant by disclosing the nature of the potential testimony as communicated to it at the time of trial."
It is true that the Lee court was talking about disclosure at trial. But the case was under review after conviction, and as we have observed earlier it is after trial that the proceedings are scrutinized through the lens of due process. Similarly for that matter, Brady as noted, was also cast in the post-trial setting. So in the final analysis, as to time of disclosure, what we are really talking about in all these cases is that a disclosure under Brady must be made at such time or under such conditions so that an accused can fairly make use of it.[29] All *559 we hold here is, that if the trial judge in his discretion deems it propitious that such disclosure be made pre-trial instead of at-trial (the proper predicate being assumed), then he has the authority to so order either directly or in camera as the exigencies might dictate.
In this vein, there is one final comment we might make concerning the authority of the trial court, upon proper showing, to compel either direct or in camera inspection. One or more of the foregoing predicates might indicate that the sought evidence could probably be compelled at trial under the Jencks rule.[30] In such case, we think it is well within the court's discretion to compel inspection thereof before trial if it appears that by doing so both time and effort would be conserved to the advantage of the court and all concerned.
For emphasis we repeat here, that the authority of the trial court to compel any pre-trial inspection at all directly flows, not from any duty to enforce a pre-trial constitutional right of the accused, but rather from the court's ultimate duty to conduct a fair and expeditious trial; and as we pointed out above, an in camera inspection is merely a discretionary device to be used in the performance of that duty. It should not be used arbitrarily however, anymore than any other judicial prerogative; and if exercised upon a proper predicate it could hardly be arbitrary.

IV
Finally, we consider the matter of pre-trial examination of Grand Jury proceedings. Concededly, the matters contained in a transcript or the minutes of Grand Jury proceedings cannot ordinarily be reached by the discovery process under our Rules of Criminal Procedure. This is so because of the bands of secrecy contemplated by the provisions of § 905.24 et seq., F.S.A. But this doesn't mean to say that they are not reachable at all. § 905.27, F.S.A. permits disclosure of the testimony of a witness before a Grand Jury when ordered by a court in enumerated instances, and when so permitted "in the furtherance of justice". Prior to our decision in State v. Drayton, supra,[31] the cases construing this latter section were first of all cast in a trial setting; and they were primarily concerned with the concept of secrecy as it came to grips either with the defendant's right to compulsory process,[32] or with the effective cross-examination aspect of the right of confrontation.[33] In Drayton, however, we affirmed a pre-trial order compelling an in camera inspection of the Grand Jury testimony of the prosecutrix in a rape case when it appeared before trial that she had theretofore given several conflicting stories to investigating officers. We simply held in Drayton, that when those circumstances occur before trial, which would justify or require an in camera inspection of Grand Jury testimony during trial as outlined in Minton, supra,[34] a trial court in its discretion could compel such inspection before trial. The rationale is not unlike our discussion under Part III, supra, of the court's duty to expedite a forthcoming trial.
But the concept of secrecy with which Grand Jury proceedings are clothed does make them unique, and sets them apart from all other evidence which might otherwise be amenable to pre-trial discovery. Therefore, the underlying principles of Grand Jury secrecy must be weighed by the trial judge against all other considerations properly addressed to his discretion in compelling vel non a pre-trial in camera inspection.

*560 V
Now to summarize our conclusions herein, we hold first that if the prosecution is or should be aware that it is exclusively possessed of knowledge of matters or of evidence "favorable" to the accused it must disclose it to the accused. Secondly we hold, that the disclosure of evidence in possession of the prosecution should not be compelled at all when it is otherwise reasonably available to an accused under our Rules of Criminal Procedure. Thirdly, we hold that a trial judge is not authorized, merely on demand, to rummage through the files of the prosecution to seek evidence "favorable" to the accused. But if it is demonstrated to him that facts or circumstances exist which support the inference that the mandate of Brady is being violated, or if he is, alternatively, persuaded by the facts alleged that it is otherwise in the interest of fairness or expediency to compel pre-trial that which could be compelled at-trial, he may (if direct disclosure to the accused is not otherwise called for) order an in camera inspection as a prelude to full disclosure to the accused of that which he ultimately may determine to be "favorable" to the accused.

VI
Applying the foregoing holdings to the facts of this case, we find in examining the respondent Gillespie's motion upon which the order under review was entered, that there was a mere naked demand for an order compelling disclosure of the desired evidence. No semblance of a sufficient predicate for such an order is apparent. Accordingly, the court was without authority to enter the broad and all-encompassing order before us. The entry thereof constituted a material departure from the existing principles of law and cannot be sustained.
As noted, the trial judge felt that he was compelled to enter such order under the authority of Williams v. Dutton.[35] We can't agree that Dutton requires such an order. It must be remembered that significantly, the Dutton case was also cast in the post-trial setting. It's true that the motion for discovery which was primarily considered by the court was a pre-trial motion; but it further appears that a substantial portion of such motion was renewed during trial, and production of the evidence was sought for use in cross-examination. The latter motion was also denied. So the persuasion of Dutton is no more applicable to the pre-trial motion than it is to the at-trial motion. In fact, quite to the contrary, since the trial judge may well have been duty-bound to grant the at-trial motion under the Dennis rule[36] (as to Grand Jury testimony), or under the Jencks rule[37] (as to much of the other evidence), while the pre-trial motion was addressed to his sound discretion. We submit further, that had the trial judge granted the at-trial motion even though he had theretofore denied the pre-trial motion, it is doubtful that the Dutton court could have perceived a possible denial of due process.
In any event, there is clearly nothing in the Dutton case from which it can be said that an all-encompassing pre-trial in camera inspection can be compelled merely on demand; and nowhere in that case is it expressly held that the pre-trial motion should have been granted in whole or in part.
Apart from these considerations, that case is otherwise materially distinguishable from the one before us. As observed earlier, none of the evidence sought in Dutton was otherwise available to the accused under Georgia law. Additionally, the sought evidence consisted essentially of specific items, and there was not merely a naked demand for "all" evidence, nonspecific and couched *561 in the broadest possible terms, as is the case here. Furthermore, from the very nature of some of the known specific items sought in that case, e.g., the written promises of immunity to co-conspirators who appear as potential state's witnesses against the accused, it appears that the accused met, at least by inference, his duty to demonstrate to the court that the mandate of Brady was likely being violated.[38]
In view of the foregoing therefore, certiorari is granted, and the order under review compelling an in camera inspection is quashed.
Certiorari granted, order quashed.
HOBSON, C.J., and PIERCE, J., concur.
NOTES
[1] (5th Cir.1968), 400 F.2d 797.
[2] See, e.g., State v. Williams (Fla.App. 2d), 227 So.2d 253, Opinion filed October 3, 1969; State v. Drayton (Fla. App.2d), 226 So.2d 469, Opinion filed August 27, 1969; State v. Shouse (Fla. App.2d 1965), 177 So.2d 724 and State v. Lampp (Fla.App.2d 1963), 155 So.2d 10.
[3] (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.
[4] See, e.g., Williams v. Dutton, n. 1 supra; United States v. Jordan (2d Cir.1968), 399 F.2d 610; United States v. Frazier (4th Cir.1968), 394 F.2d 258; North American Rockwell Corp. v. N.L.R.B. (10th Cir.1968), 389 F.2d 866; Barbee v. Warden (4th Cir.1964), 331 F.2d 842; United States v. Wolfson (S.D.N.Y. 1968), 289 F. Supp. 903.
[5] In Florida, see e.g., Rule 1.220, Cr.R.P., 33 F.S.A.
[6] Cf., Dennis v. United States, (1966), 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, and the authorities cited therein.
[7] See, e.g., Brady v. Maryland, n. 3 supra, and all pertinent cases cited therein; and Williams v. Dutton, n. 1 supra, and the cases collected in Footnote 6 thereof.
[8] See, e.g., Goldstein, The State and Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149 (1960); and Louisell, The Theory of Criminal Discovery and the Practice of Criminal Law, 14 Vand.L.Rev. 921 (1961).
[9] See, also, State v. Drayton (Fla.App.2d 1969), n. 2, supra.
[10] See the cases cited in n. 7, supra.
[11] Williams v. State (1966), 222 Ga. 208, 149 S.E.2d 449.
[12] Id. at p. 453.
[13] January 1, 1968 [by order of the Supreme Court (Fla. 1967), 196 So.2d 124.]
[14] See, Canons of Ethics Governing Attorneys, Canon 5 of which sets forth, in part, that:

"The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible."
See, also, Final Draft, American Bar Association Special Committee on Evaluation of Ethical Standards, "Code of Professional Responsibility" EC 7-13 and DR 7-103.
[15] Cf. United States v. Wolfson, n. 4, supra.
[16] See, North American Rockwell Corp. v. N.L.R.B., n. 4, supra.
[17] (1965), 239 Md. 458, 212 A.2d 101.
[18] (1967), 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737.
[19] A written promise of immunity to a witness-codefendant, as in Dutton, supra, for example, would fall in this last category.
[20] Cf., United States v. Westmoreland (S.D.Ind. 1967), 41 F.R.D. 419, 427.
[21] See, Jencks v. United States (1957), 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.
[22] See n. 4, supra.
[23] A different duty exists, of course, in those instances in which the aid of the court is permitted or called for under Rule 1.220, Cr.R.P.
[24] Cf., Talavera v. State, (Fla.App.2d) 227 So.2d 493. Opinion filed October 15, 1969.
[25] See, n. 4, supra.
[26] See, Giles v. Maryand, n. 18, supra.
[27] (9th Cir.1968), 388 F.2d 737.
[28] Id., at p. 739.
[29] See, A.B.A., Project on Minimum Standards for Criminal Justice, Standards Relating to Discovery and Procedure Before Trial (tentative draft 1969).
[30] See n. 21, supra.
[31] See n. 2, supra.
[32] See, e.g., Trafficante v. State (Fla. 1957), 92 So.2d 811.
[33] See, e.g., Minton v. State (Fla. 1959), 113 So.2d 361; see, also, Dennis v. United States, n. 6, supra.
[34] Id.
[35] See, n. 1, supra.
[36] See, n. 33, supra.
[37] See, n. 21, supra.
[38] Cf., Lee v. United States, n. 27, supra.