IVORY LEE WILLIAMS v. STATE.

197 So. 562
En Banc
Opinion Filed August 2, 1940

*Parks M. Carmichael,* for Appellant;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General. for Appellee.

CHAPMAN, J.—The appellant, Ivory Lee Williams, on October 20, 1939, was indicted by a grand jury of Alachua County, Florida, for the crime of murder in the first degree. The crime, as set out in the indictment was alleged to have been committed on the 14th day of September, 1939. The defendant was arraigned, entered a plea of not guilty, placed on trial and was convicted by a jury of murder in the first degree, without recommendation to mercy. He was sentenced to death by electrocution and from the said judgment has perfected an appeal to this Court.

The appellant, hereinafter called the defendant, was taken into custody by the Sheriff of Alachua County, Florida, on September 15, 1939, and the record shows that he was placed in the county jail of Alachua County and shortly thereafter signed a written confession. A second written confession was signed by the defendant in the Putnam County jail, and these two confessions were admitted into evidence during the progress of the trial of the cause.

It is conceded that these written confessions refer to the same crime, but the Putnam County confession, identified as States Exhibit No. 3, contains all the facts appearing in the confession made in the Alachua County jail, identified as State's Exhibit No. 2, with additional admissions. Proper objections were seasonably made to the admission into evidence of each of the confessions Nos. 2 and 3 by counsel for the defendant during the progress of the trial in the lower court and the same were overruled and denied, and the rulings thereon are assigned as error in this Court. The

principle of law involved can be fully determined by this Court in reviewing the ruling of the trial court in admitting into evidence the written confession of the defendant made in the Putnam County jail and identified in the record as Confession No. 2 and State's Exhibit No. 3, which is, viz.:

"Statement of Ivory Lee Williams made in County Jail at Palatka, Fla., Monday night, 9/18-1939 at 10 P. M.

"Last Thursday morning I got up about 6 o'clock and stayed around home about 1 hour and then went up to Mr. Pettits feed mill and stayed there about one hour. I then went to Ice Plant & got a drink of water and staid there about five minutes and while at the Ice Plant I decided & planned to go to Mrs. Hodge's & do something to her or ravish her.

"I then went on down dirt road to Mrs. Hodges house & went in the gate at the Peanut House just side of Mrs. Hodge house. I stayed about 30 minutes at the peanut house & while I was there I noticed one car pass going towards Alachua and two pass going from Alachua. I then left the peanut house & went the trail to Mrs. Hodges house & asked her if Mr. Earl Davis had come & she said No. she hadn't seen him. I went on up in the field and got an iron double tree & brought it back to the house. I walked up within six feet of pump and asked Mrs. Hodge if she had an axe and she asked me if the double tree was bent & I told her yes and she said the axe was in the chimney corner. I went & got the axe & come back to where double tree was & hit it with axe several licks & while I was hitting on it Mrs. Hodge started back to washing with her back towards me and I raised up & hit her back of the head with axe & she dropped there & I caught her from her back under her arms and walked backwards dragging her backwards out into the weeds and stopped & rested after getting into the weeds about 10 steps and laid her down I looked all

around to see if anyone was around. I then dragged her about 15 steps further and laid her on her back in the velvet beans & tore all her clothes off which was only a yellow dress, and then I put part of the dress over her face & mouth and got on her & got it from her or ravished her one time. While I was doing it to her she tried to push my hands from over her face.

"I got through & got up & she was whining & groaning & I went & got the axe and hit her once on side of head & once on front of head and then took axe back & leaned it up against wash bench. Then I went back up through field by the plow where I got the double tree and kept on back thru fields and come out on RR between Alachua & High Springs and walked a short distance on RR towards Alachua & then crossed the highway and on by the Colored School on down to Willie James shop & talked to him there. Then I went home on by Sarah McKimeys house & I throwed my sweater in the wash tub at home & pulled off my shoes & cut toes off each shoe with a butcher knife.

"In a short while I went back to Sarah McKinney's house & talked to Sam Black & Viola. I stayed there about 30 minutes. It was then a little after 12 noon.

"I have not been punished or mistreated in any manner to cause me to make this statement neither have I been promised leniency or reward of any kind to cause me to do so. I have been told of my Constitutional rights & have been told that this statement would be used against me in court. I have been asked to tell the truth and this statement is made of my own free will & accord & This statement has been read to me & is the truth.

"Ivory Lee Williams."

"Witnesses:
"J. P. Ramsey
"Fred Holloman."

The extrajudicial confession was objected to first on the ground that the same was not voluntarily made by the defendant and at the time thereof he was not advised as to his constitutional rights; and that the defendant was a young, inexperienced darkey and threats or coercion were resorted to in obtaining the confession. The record shows that the trial court, when the objections were made, excused the jury and in its absence heard testimony on the question of whether or not the confession was obtained in a constitutional manner. We have carefully reviewed the testimony appearing in the record on which the trial court based its ruling to the effect that the confession was freely and voluntarily made. There was no evidence offered by the State or defendant to show that the confession was involuntarily made. The cases cited by counsel for defendant on the point in issue have been examined.

The fact that the defendant was taken into custody on suspicion and questioned by the Sheriff of Alachua County, and his deputies or assistants, is not a sufficient legal cause to exclude either of the written confessions. If the confession emanates freely and voluntarily and is made without fear, hope of reward and promise of escaping punishment, or some other illegal influence, the same is properly admitted. See Clay v. State, 143 Fla. 204, 196 So. 462; Smith v. State, 135 Fla. 835, 186 So. 203; Cawthon v. State, 118 Fla. 394, 159 So. 366; Dabney v. State, 119 Fla. 341, 161 So. 380; Harrison v. State, 110 Fla. 420, 148 So. 882; Nickels v. State, 90 Fla. 659, 106 So. 479; Green v. State, 40 Fla. 191, 23 So. 851; McNish v. State, 47 Fla. 69, 36 So. 176; Sims v. State, 59 Fla. 38, 52 So. 198; Williams v. State, 48 Fla. 65, 37 So. 521; Moore v. State, 68 Fla. 91, 66 So. 431; McDonald v. State, 70 Fla. 250, 70 So. 24; Davis v. State, 90 Fla. 317, 105 So. 843; Chambers v. State, 60 S. Ct. 472, 84 L. Ed. ......; Bram v. United States, 168

U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568; Ziang Sung Wan v. United States, 266 U. S. 1, 45 S. Ct. 1, 69 L. Ed. 131.

It is next contended that the lower court erred in its order overruling and denying the defendant's motion requiring the State of Florida to produce for the purpose of inspection on the part of counsel for the defendant the confessions of the defendant; that the request to the trial court was seasonably made prior to the trial and the order of denial as made was contra to the spirit and meaning of Section 154 of Chapter 19554, Acts of 1939, Laws of Florida; and that the denial had the effect of taking counsel by surprise when the case was being tried and deprived counsel of the opportunity or privilege of a thorough investigation so as to determine whether or not the confessions were unlawfully obtained from the defendant.

Section 154 of Chapter 19554, *supra,* provides for the production and discovery of documents and things for inspection on the part of a defendant or his counsel in a criminal prosecution. The meaning of the statute is clear and free from uncertainty and ambiguity in that it specifically enumerates the "documents and things" that a court can by an order require the State of Florida to produce on proper application. These enumerated documents and things are fully set forth and described. The statute fails or omits to include written confessions made by a defendant, but does provide for the production of "other tangible things," which words cannot be construed or interpreted to include written confessions as here involved.

Dr. C. B. Pollard, a chemist and toxicologist, testified that he examined specimens of blood of the deceased and the defendant; that the blood of the deceased was classified as type No. 2, while that of the defendant was classified as type No. 4; that types 2 and 4 would not agglutinate or unite; and that a chemical analysis of blood taken from the

trousers worn by the defendant was classified as type No. 2. Counsel for the defendant, for numerous reasons, seasonably objected to the introduction into evidence of the conclusion of the chemist and toxicologist and this adverse ruling is assigned as error in this Court.

In the case of State v. Damm, 62 S. D. 123, 252 N. W. 7, 104 A. L. R. 450, it was stated the reliability of the blood test as to the four types of blood is universally conceded, and expert testimony as to which of the four types of blood caused the stain would be equally admissible, and the expert may further testify as to which of the four types the accused has, if he knows, for the purpose of showing the stain was not caused by the blood of the accused; and also which type of blood was to be found in the body of the deceased, not for the purpose of identifying the blood stain as blood from the body of the deceased, but as corroborative evidence for the consideration of the jury.

In Volume 2 of Jones on Evidence (4th Ed.), page 675, it is said:

"The testimony of the chemist who has analyzed blood, and that of the observer who has merely recognized it by the use of the senses belong to the same legal grade of evidence, and though the one may be entitled to greater weight than the other with the jury, the exclusion of either is not sustainable."

In 20 American Jurisprudence, page 746, it is stated that " * * * expert testimony is often used to identify blood or blood stains by chemical analysis * * *," and in 30 Corpus Juris, page 163, it is said "evidence of blood stains and other marks of the crime upon the person or property of defendant may be admitted, as for example, a spot of blood upon his clothes, together with a physician's analysis thereof." Any evidence tending to identify defendant as the guilty

person, and show his presence at the scene of the crime, is relevant and competent.

In Fincher v. State, 211 Ala. 388, 100 So. 657, a witness was allowed to testify that stains "looked like blood." See also Green v. State, 153 Ga. 215, 111 S. E. 916; Howard v. State, 92 Tex. Cr. 221, 242 S. W. 739. In the latter case the testimony of a physician, who later examined stains found on another person, that the stains were in fact blood stains, was held admissible. See McKee v. State, 52 Okla. Cr. 289, 5 Pac. (2d) 176.

This Court has held that though a non-expert is incompetent to testify that certain stains on clothing found by him were blood stains, yet he may testify to the fact that stains were found, and may state the color of these stains. Gantling v. State, 40 Fla. 237, 23 So. 857.

The defendant was insolvent and not financially able to employ counsel, when the trial court appointed Attorney Parks M. Carmichael, of the Gainesville Bar, to represent him. Counsel in his brief says:

"* * * Counsel has incurred the extreme displeasure of certain citizens of this community for doing his duty in this case and Counsel now asks this Court, because of the seriousness of the charge as well as the extreme penalty, to pay particular attention to the record in this case and to give the defendant the advantage of any error that might have occurred; even though Counsel may have failed to argue the same."

Section 8375 C. G. L. authorizes the trial court to make the appointment of counsel for the defendant. High authority, independent of statute, holds that a trial court has the inherent right in the administration of justice, to appoint an attorney to represent an indigent defendant charged with a felony. See 14 Am. Jur., par. 174. The attorney being an officer of the court, and when by the court appointed to

represent, professionally, an indigent person charged with a felony, it then became his duty to render faithful and efficient professional services so that the courts may so function that the legal rights of an indigent defendant may be determined and justice administered according to law. These obligations rest on an attorney as an officer of the court, regardless of the enemies or the friends made by counsel while discharging his professional duties in the trial of a case before the courts.

Careful consideration has been given to other assignments appearing in the record. While technical error may exist in some of the adverse rulings to the defendant, we do not think or believe that the same are sufficient to justify this Court in reversing the judgment and ordering a new trial. The evidence has been studied and weighed and we believe the same is ample to sustain the verdict. We have heard oral argument at the bar of this Court, the briefs have been read and the authorities cited examined, but we have failed to find error in the record.

The judgment appealed from is hereby affirmed.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and THOMAS, J. J., concur.