104 So.2d 43 (1958)
Diamante URGA, Appellant,
v.
STATE of Florida, Appellee.
No. 183.
District Court of Appeal of Florida. Second District.
June 18, 1958.
*44 Mark R. Hawes and Pat Whitaker, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., and Odis Henderson, Asst. Atty. Gen., for appellee.
DREW, E. HARRIS, Associate Judge.
The appellant, Diamante Urga, was convicted in the Criminal Court of Record for Hillsborough County on a charge of performing an abortion, and was sentenced to a term of five years' imprisonment. Three matters are urged for reversal upon this appeal: that there was error in denying a subpoena duces tecum in aid of the defense, that cross-examination of the prosecutrix was prejudiciously limited, and that certain other testimony in chief was improperly allowed to stand.
The first point must be disposed of adversely to appellant on authority of the recent decision in Raulerson v. State, Fla., 102 So.2d 281; McAden v. State, 155 Fla. 523, 21 So.2d 33; and Williams v. State, 143 Fla. 826, 197 So. 562. These cases establish the general rule in this jurisdiction that a defendant is not as a matter of right entitled to a transcript of statements of state witnesses taken by the prosecution in the course of preparation for trial under the circumstances here involved, and the reasoning there applied fully disposes of the argument on the point in the instant case. Cf. Trafficante v. State, Fla., 92 So.2d 811; Smith v. State, Fla., 95 So.2d 525.
The argument with respect to cross-examination of the prosecutrix presents a closer question. The witness testified at the trial which occurred on September 28 and 29, 1955, that she had freely and voluntarily made her original statement on January 21, 1954, implicating the defendant. By an intervening motion to suppress, however, in October, 1954, and testimony in support thereof, she exonerated the defendant and claimed her first statement was procured by coercion and duress. This resulted in the filing of an information for perjury against the witness which, at the time of this trial, had been withdrawn. Her testimony at the *45 trial constituted the sole direct evidence upon the charge against defendant.
On cross-examination, defense counsel sought to interrogate this witness concerning statements contained in the above mentioned motion to suppress and in testimony before the court in connection with that motion, in conflict with her trial testimony. While objections to such inquiries were varied and numerous, colloquy between court and counsel for the state and the defendant in fact constituting more than half the record, the significant issue presented on this appeal relates to the propriety of the court's ruling, directed to the defense counsel and repeated at several points, that "If you wish to ask anything about the record, you will first have to file it in evidence in the case," on the theory that the written transcript or record constituted the "best evidence" of its contents.
The objections of counsel on the ground specified, directed as they were to efforts of the defense on cross-examination to obtain from the witness an admission or denial of the statements in question, should not have been sustained. The record indicates that defense counsel did, in the final analysis, adequately identify the time, place and circumstances of the statement in question, and did ultimately satisfy objections in this respect. The inquiries allowed were sufficient to apprise the jury of the fact that the witness had in fact on a prior occasion given contradictory testimony under oath, but objections were sustained on each occasion when attempts were made to put to the witness the specific questions asked and responses made.
It is said that the extent or volume of such inquiries should be subject to the control of the court, and that in the case of contradictory statements in writing or on public record the court may, in its discretion, permit the introduction of such document or record upon cross-examination out of the regular order of proof. Jones Commentaries, 2nd ed., Vol. 6, Sec. 2409. See, also, Williams v. State, Fla., 74 So.2d 797. But this rule clearly does not contemplate that the right to full and complete inquiry, as to all material portions of the contradictory matter, in the absence of some compelling circumstance, can be conditioned upon introduction of such documents in evidence at this point.
The statute provides in effect that proof of such inconsistencies cannot be made unless and until the witness is asked "whether or not he made such statements" and answers in some fashion which "does not distinctly admit that he has made such statement." F.S. Sec. 90.10, F.S.A. A proper predicate for impeachment must, therefore, put before the witness the substance of the statements in question, and reference to a transcript or other writing to obtain the precise language of the statement could hardly be objectionable unless there is shown to be some abuse by failure or refusal to permit the witness to examine the document. Simmons v. State, 32 Fla. 387, 13 So. 896; Stewart v. State, 58 Fla. 97, 50 So. 642. These cases make no mention of a requirement that the statement be introduced in evidence prior to cross-examination as to its contents, and the general authorities on the point do not support such a conclusion. Wigmore on Evidence, 3rd ed., Vol. IV, Sec. 1259-1263.
Even if we assume, without deciding, that in the case of recorded testimony the stenographer's notes or transcript would constitute the best evidence of such statements (see Conrad Modern Trial Evidence, Sec. 379; Annotation, 11 A.L.R.2d 30), that rule has no applicability where the object is not to prove the truth of statements contained therein, but merely to show such inconsistencies as bearing upon the general credibility of the witness, or for the purpose of laying a proper foundation for impeachment by introduction of the contradictory matter in due course of events. It is inconceivable that a defendant could be forced in this situation to jeopardize or relinquish what has been termed a "vested *46 procedural right," the right to the concluding argument before the jury where a defendant offers no independent evidence in his behalf, in order properly to utilize the tool of cross-examination or even to lay a sufficient predicate for possible impeachment under the statute. F.S. Secs. 918.09 and 90.10, supra, F.S.A.; Birge v. State, Fla., 92 So.2d 819.
The remaining contention is that the court erred in permitting the prosecutrix to testify in effect that friends told her the defendant was an abortionist and that she thereafter went to see the party named to her, the defendant. Whether or not, as argued by appellee, the record fails to show any deliberate elicitation of prejudicial matter, the objectionable character of testimony allowed to stand is apparent:
"Q. What did you do then? A. Then, I went back to St. Petersburg and consulted with a few people to get the name of an abortionist, preferably in Tampa.
"Q. All right. Then what did you do? A. Then, I 
"Mr. Hawes: Now, if your Honor please, I object to and move to strike that question about her consulting with people to get the name of an abortionist, preferably in Tampa. I had no way of knowing, under the form of the question that he asked, that any such highly improper answer as that would be given, your Honor. I move to strike that, sir.
"Mr. Johnson: I think the answer was proper, if the Court please.
"The Court: She hasn't said what anybody told her. She just said what she did.
"Mr. Johnson: She said the doctor confirmed her suspicion about her being pregnant, then she went to find out about an abortionist, preferably in Tampa, and I think it proper to find out what she did.
"The Court: I think, in a case of this sort, I will overrule the objection.
"By Mr. Johnson:
"Q. All right, Rosalie, whom did you go to see after making these inquiries in Tampa  in St. Petersburg?
"Mr. Hawes: Now, if your Honor please, I object
* * * * * *
"Q. What did you do after  whom did you go to see after making these inquiries? Did you get the name of anyone? "A. Yes, I went to see a Madam Urga in Tampa."
Cf. Collins v. State, Fla., 65 So.2d 61. Since, however, it cannot be assumed that the same error will transpire upon trial anew, the point need not now be further discussed.
The judgment of conviction is reversed and the cause remanded for a new trial.
Reversed and remanded.
KANNER, C.J., and ALLEN, J., concur.