193 So.2d 460 (1967)
William Russell GIBBS, Appellant,
v.
STATE of Florida, Appellee.
No. 6975.
District Court of Appeal of Florida. Second District.
January 6, 1967.
*461 Goldburg, Putney, Taylor & Hampton and Manuel M. Garcia, Tampa, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
ADKINS, JAMES C., Jr., Associate Judge.
Defendant was tried upon an indictment charging him with the offense of first degree murder by shooting Robert Earl Catrett. He was convicted of murder in the second degree and sentenced to twenty years in the state penitentiary, from which judgment and sentence he appeals to this court.
While negotiating a lease, Donald Everett Walker, an uncle of deceased, occupied property owned by defendant. The lease negotiations failed and Walker decided to move from the premises on Labor Day, 1965. The defendant met Walker and his nephew, Catrett, at the premises in the morning for the purpose of opening the premises and permitting Walker and Catrett to remove personal belongings from the premises. Apparently the parties were amicable during the morning.
In the early afternoon Walker and Catrett returned to the premises and proceeded to load their truck with some lumber. The defendant arrived and told them they could not have the lumber. Conflicting descriptions were given of the events transpiring after this dispute arose.
Walker testified that no conversation took place between defendant and deceased; that the only conversation was a calm statement by defendant that they could not have the lumber and a calm statement by Walker that the lumber had been given to his nephew Catrett; that there was no argument; that Catrett suddenly reached for *462 defendant's hand and a shot was fired into the ground; that he saw a gun in defendant's hand; that Catrett and defendant tussled and during the tussle two more shots were fired, striking Catrett.
Buddy Wells, a 69 year old Negro who was working nearby, testified that loud cursing attracted his attention; that he then saw Walker, Catrett and defendant tussling with each other; that he heard gunshots and immediately went to the nearest house.
Defendant who was 70 years old and suffering from a heart condition, did not testify. Catrett was 33 years of age and in good health.
Much of the voir dire examination was conducted by the Court. Although there is nothing in the law to prohibit the court itself from conclusively conducting such examination, yet the most convenient and better practice sanctioned by long usage, is to allow such examinations to be conducted by the counsel in the cause, the court judicially supervising, directing, supplementing or rectifying the same. Pinder v. State, 27 Fla. 370, 8 So. 837, 26 Am.St. Rep. 75; Jones v. State, 35 Fla. 289, 17 So. 284.
During the course of the examination the court made the following statement:
"Now, there is one test that the Court can suggest to you that you could apply along with any other test that you might think would be reasonable in determining whether or not you can be fair and impartial as a jury in this case, and that test is this: That if you were here this morning, not as a Juror but as the defendant or the attorneys representing the state, either one, would you be satisfied that you'd get a fair trial if every member of the Jury Panel that was going to try your case had the same state of mind that you have as you sit there now."
The purpose of the examination of jurors on the voir dire is to ascertain the qualifications of the persons drawn as jurors, and whether they would be absolutely impartial in their judgment. 14 F.L.P. Jury, § 114. The examination should be so varied and elaborated as the circumstances surrounding the jurors under examination in relation to the case on trial would seem to require in order to obtain a fair and impartial jury whose minds are free of all interest, bias or prejudice. Pope v. State, 84 Fla. 428, 94 So. 865; Pinder v. State, 27 Fla. 370, 8 So. 837, 26 Am.St. Rep. 75.
It is improper to ask a juror if his mind is in the same state he would like the juror's mind to be in if he, the juror, were being tried. 14 F.L.P. Jury, § 139; Roberts v. State, 94 Fla. 149, 113 So. 726. The suggestion of this test by the court was clearly erroneous, as a juror does not possess the right to pass upon questions touching his qualifications to serve in a particular case. That prerogative rests with the court. See Story v. State, 53 So.2d 920 (Fla. 1951).
After suggesting the above test, the court added:
"That is, that you presume the defendant to be innocent, and you are going to seek the truth  verdict  that is what verdict means, the truth; that you are going to seek the verdict based on the evidence that comes before you in the courtroom, the testimony and any other evidence that might be admitted by the Court. That doesn't mean that you are going to be friendly to the defendant, or friendly to the State, or anything like that; it just simply means as you sit there right now, you have only one desire, and that is to seek the truth based on the evidence, and if at any time any one of you has a feeling that you cannot do this, you have an obligation to make that known to the Court."
Jurors are required to consider all the evidence in a case and from it, and from the law as charged them by the Court, *463 arrive at a verdict. A verdict is the determination of the jurors after applying their findings of fact to the law given in charge by the court. The latter statement of the court lessens the importance of the instructions of the court in the jury deliberations. Furthermore, such a limited explanation of the verdict could result in a juror voting to convict a defendant because he feels that the defendant did, in truth, commit the offense, even though his guilt may not be proven to the exclusion of every reasonable doubt.
Objections were not made in the lower court, and the making of these comments was not such fundamental error of law as to constitute the sole cause of reversal. However, this error may be considered with other assignments of error in determining whether the substantial rights of the defendant have been injuriously affected.
When asked to identify a picture, the witness Walker stated that it was a picture "of my nephew laying there on the ground, dead." An objection was overruled. Thereupon the following occurred:
"Q. Mr. Walker, do you know when that photograph was taken?
"A. That was taken immediately after the  he murdered my nephew.
"Mr. Goldburg: Your Honor, I object to that, I object strenuously to that. This witness is completely prejudiced and showing it on the stand. He's used the words: `murdered my nephew.' That is what they are here to find, whether or not he and his nephew did not go ahead and assault this man on his own property. I ask that he be instructed  he is completely prejudiced, and it will come out later how.
"The Court: The objection is overruled, and you may proceed on with your examination."
The opinion of a witness as to the guilt or innocence of an accused person is not admissible in evidence. 6 F.L.P. Criminal Law, § 458; Myers v. State, 43 Fla. 500, 31 So. 275. Such testimony should be stricken by the court of its own motion. Blackwell v. State, 76 Fla. 124, 79 So. 731, 1 A.L.R. 502. See also, Urga v. State, 104 So.2d 43 (Fla.App.2d Dist. 1958).
Walker testified that after the shooting he ran to his automobile and the defendant picked up an axe and threw it at him. When Wells was called as a witness for the state, he testified on direct examination that he had not seen defendant throw an axe at anyone. The state then claimed surprise and asked that Wells be declared a hostile witness because of a prior inconsistent statement Wells had made to an investigating officer.
Over defendant's objection, the state was permitted, first in absence of the jury, and then before the jury to present the testimony of Vogt to the effect that Vogt had questioned Wells immediately after the shooting and that Wells had stated that defendant had thrown the axe at Walker's car.
The impeachment of a witness is regulated by F.S.A. § 90.09. In case a witness proves adverse, this statute authorizes the party producing him to contradict him by other evidence or prove that he has made at other times a statement inconsistent with his present testimony. A party producing a witness cannot impeach him unless he not only fails to give beneficial testimony but also he must become adverse by giving evidence that is prejudicial to the party producing him. A party cannot impeach his own witness who merely fails to testify as to beneficial facts. Hernandez v. State, 156 Fla. 356, 22 So.2d 781; Johnson v. State, 178 So.2d 724 (Fla.App. 2d Dist. 1965). See also, 26 F.L.P. Witnesses, § 103. It does not appear that the witness Wells gave evidence that was prejudicial to the cause of the State, and no *464 sufficient predicate was made for the introduction of Vogt's testimony.
When it appeared that Wells' testimony was not as beneficial as expected, the state proceeded to interrogate him as to previous conflicting statements. Wells then denied that he had talked to anyone about his testimony. In the face of this denial, the state asked several questions which may have created the impression with the jury that defendant had talked to and influenced the state witness to change his testimony. This interrogation was calculated solely to prejudice the jury and should have been halted by the court, even in the absence of an objection.
For the above reasons the judgment and sentence must be reversed and the cause remanded for a new trial.
LILES, Acting C.J., and HOBSON, J., concur.