RAWLS, Judge
(dissenting).
Robert Beckton, Jr., defendant below, appeals a judgment of conviction of murder in the second degree. Of the five points posed by appellant on this appeal, it is my view that the following two points have merit:
1. May a prosecuting attorney, who is unsuccessful in procuring a ruling from the trial court that his own witness is adverse, conduct a prolonged interrogation of such witness for more than an hour’s duration for the obvious purpose of discrediting such witness?
2. When the trial court repeats — at jury request — its instructions on the degrees of homicide, including second degree murder, *224 third degree murder and manslaughter, is there error if the court fails to repeat its instructions of justifiable and excusable homicide ?
As to the first point, the State called as its witness one Jimmie Hines, a brother-in-law of the defendant, who was present at the time of the “shoot-out” that resulted in the death of one George Davis. Hines testified at the outset that he was too drunk to remember what had happened. The record reflects that at this stage the State subjected Hines to an intense third degree type of interrogation that belittled the witness and showed contempt by the prosecuting attorney for the witness. At one point during this interrogation, the trial judge stated, “We have gone about an hour here with T don’t know, I don’t remember.’ And I was wondering if you are intending to impeach him?” The prosecuting attorney very candidly replied, “This is what I had hoped to do, Your Honor.” This colloquy occurred after several previous attempts had been made by the prosecuting attorney to impeach his own witness even though he had been unsuccessful in procuring from the court a ruling that the witness was adverse. Succinctly, the State did not procure beneficial testimony from its own witness; however, it did not lay a sufficient predicate for the court to declare Hines to be an adverse witness. From my reading of this record it appears that the State, well knowing the relationship of this witness to the defendant, placed him upon the stand and then set out upon a preconceived and determined course of discrediting its own witness.
It is well settled that a party by calling a witness holds him out as worthy of credit and should not be allowed to impeach him, 35 Fla.Jur., Witnesses § 249. To impeach its own witness, a party must procure from the court a ruling that the witness is adverse. Hernandez v. State, 156 Fla. 356, 22 So.2d 781, 786 (1945), succinctly states the rule for finding a witness to be adverse:
“He [the witness] must not only fail to give the beneficial evidence expected of him, but he must become adverse by giving evidence that is prejudicial to the cause of the party producing him.”
Such was not the case here. The majority in its finding that “the briefs and record on appeal having been read and given full consideration” apparently have approved the tactics used by the Assistant State’s Attorney in this cause. In my opinion, such conduct should not be condoned by this court. The following statement in Gibbs v. State, 193 So.2d 460, 464 (Fla.App.2d 1967), sums up my view of the State’s purpose in putting Hines on the stand, viz.:
“This interrogation was calculated solely to prejudice the jury and should have been halted by the court, even in the absence of an objection.”
In the instant cause continuous and strenuous objections were made but the court permitted the State to continue its interrogation which so obviously was calculated solely to prejudice the jury.
As to the second point, after the jury deliberated for awhile it made the following request:
“The Foreman: Your Honor, we have a request for a rereading of the law as it applies to murder in the second degree, murder in the third degree, guilty of manslaughter, and also we would like to have a legal explanation of a depraved mind.”
The trial court told the jury it could not enlarge upon the instructions previously given, reiterated the possible verdicts of the jury, and then proceeded to reread its instructions on murder in the second degree, murder in the third degree, manslaughter, aggravated assault, assault and battery and assault. However, the court failed to reread its instructions on justifiable and excusable homicide.
Our Supreme Court held in Hedges v. State, 172 So.2d 824, 826 (Fla.1965), as follows:
“In the instant case when the judge repeated his charges on degrees of homi *225 cide he should have included the requested definitions of justifiable and excusable homicide. Failure to do so erroneously left with the jury an incomplete, and, potentially misleading instruction.”
and promptly reversed the judgment of conviction for failure of the trial judge to re-instruct the jury as to justifiable and excusable homicide. The State urges that Hedges v. State, supra, is not applicable here because an instruction was not requested by the defense as to justifiable and excusable homicide when the trial judge recharged the jury. It is my view that the failure to so instruct by the trial judge is such a fundamental error that the cause must be reversed even though same was not requested.
In my opinion this defendant did not receive a fair and impartial trial and I would reverse the judgment of conviction with directions that the defendant be granted a new trial.
Dissent.