BROWN, LUCY CHERNOW, Associate Judge.
 

 We affirm the trial court’s final judgment adjudicating appellant guilty of trafficking in cocaine. We write to explain our determination of the first issue raised by appellant. Appellant argues the trial court reversibly erred by denying his motion for mistrial which was based solely on one comment made by the prosecutor during
 
 *874
 
 opening statement. Appellant asserts the comment improperly instructed the jury to reach its verdict based on “the truth,” rather than on proof beyond a reasonable doubt. We disagree and examine the comment in context.
 

 During October, 2003, Agent Chris Hunt of the Drug Enforcement Agency (DEA) worked with an informant to investigate appellant. The informant had been charged with drug trafficking several months earlier. Facing thirty years imprisonment and a fifteen-year mandatory minimum sentence, informant chose to work with law enforcement as a cooperating source. Because of his cooperation in several cases informant was ultimately sentenced to five years probation.
 

 At trial, informant testified that he had been selling drugs to appellant on a weekly basis for approximately one year. A few months after informant’s arrest, informant saw appellant at Cheers bar in Ft. Lauder-dale. Appellant gave informant his business card and informant said he would call appellant in a few days to arrange the sale of nine ounces of cocaine. Agent Hunt and Detective Pat Fletcher, of the Bro-ward Sheriffs Office, recorded a conversation between appellant and informant on October 21, 2003, in which appellant told informant that he could give informant $1,000 any time, and informant replied that he would get appellant “a nine” and appellant would owe him the remaining $3,500. Informant testified that “a nine” referred to nine ounces of cocaine.
 

 On October 22nd, another telephone conversation was recorded in which appellant called informant to tell him he had $1,000 and informant responded that it would have to wait one day because informant had not yet seen his source.
 

 On October 23rd, appellant met informant at Bru’s Room in Pompano Beach. Informant was sitting in his car in the parking lot. Informant’s car had been equipped with video recording equipment. Appellant approached the vehicle and told informant that he had left the money at home, and asked whether he could take “it” and bring the
 
 money
 
 back. Informant told appellant that he would wait there for appellant to return with the money, and appellant did return in ten minutes with $1,000. Informant counted the money and opened the glove box containing the cocaine. Appellant took the cocaine from the glove box and put it in a black “Hard Rock” bag. As appellant exited the vehicle, police surrounded and arrested him. A videotape of the transaction and the audio tapes of the recorded telephone conversations were introduced into evidence.
 

 The testimony of both Agent Hunt and Detective Fletcher corroborated informant’s account of the events leading up to appellant’s arrest. Fletcher testified that he monitored and recorded the telephone conversation of October 21st. Fletcher explained that the lab tech at the Sheriffs office packaged the cocaine in a gallon zip lock baggie and that he placed the baggie in the glove box. Fletcher testified that he searched informant’s vehicle before and after the meeting between appellant and informant and that the black “Hard Rock” bag had not been in the vehicle during either search.
 

 Appellant took the witness stand to testify to his own version of the events. Appellant testified that he had previously lent a number of expensive tools to informant and that informant still had his tools. According to appellant, when the two met at Cheers in October, 2003, informant told appellant that informant had been in legal trouble and had no money, reminding appellant that appellant still owed him $4,500 dating back to the time when they had lived together. According to appellant’s testimony, appellant then offered to give
 
 *875
 
 informant $1,000 and informant agreed to return appellant’s tools. The two agreed to meet at Bru’s Room to exchange the tools and money. Appellant stated that when he entered informant’s vehicle, there was a black “Hard Rock” bag on the passenger seat, which he picked up without knowing what was inside. Appellant testified that he never saw any drugs in the vehicle and never attempted to purchase cocaine.
 

 The jury found appellant guilty of trafficking in cocaine. The trial court sentenced him to eight years imprisonment. On appeal, appellant argues that one comment made by the prosecutor in his opening statement created reversible error. In relevant part, the prosecutor’s opening statement was as follows:
 

 Yes, through the help of [informant], the sheriffs office, through DEA we’re selling a quarter kilogram of cocaine to a man that was readily in the business of buying it. And readily in the business of buying it from [informant] for a fairly lengthy period of time and he got caught.
 

 And, yes, [informant], you’re going to hear he’d (sic) a convicted felon. Yes, you’re going to hear a convicted drug trafficker from his case in Palm Beach County. Yes, you’re going to hear that he was facing a thirty year prison sentence with a fifteen year minimum mandatory and he worked for over a year with the DEA to make bunch of cases to work himself out of a jam. And eventually the Palm Beach County State Attorney’s Office convicted him of that crime, drug trafficking, and gave him a-a five year probationary sentence for all the cases that he had worked on. You’re going to hear that he’s currently still on supervision for that ease out of Palm Beach County.
 

 And you’ll hear that I had nothing to do with that case relating to — I wasn’t his prosecutor. I’m a Broward County Prosecutor; wasn’t involved in the decision of that sentence. Wasn’t involved in, you know, monitoring his probation currently or any of that other scenario. I guess somebody in my position in Palm Beach County is doing that.
 

 But this case was made in Broward. It was the only case made in Broward; dropped in my lap to prosecute. So, therefore, folks, I ask you: judge his credibility, judge all the witnesses’ credibility, listen to the phone conversations, watch the tapes, listen to all the evidence, don’t make any fixed opinions, and when you come back and you hear everything — when you hear everything — [informant], the police, the films, the tapes, photos — then get together and make a collective decision on what the truth is about that circumstance of how that case came to be developed on October 23rd [objection by counsel] — about what actually happened on October 23, 2003 and make your decision after the close of all the evidence. Thank you.”
 

 (Emphasis added.)
 

 At that point, at sidebar, appellant’s attorney made his motion for mistrial, stating “the prosecutor said the jury should make a decision as to what’s the truth. That is,
 
 per se,
 
 a mistriable comment. The jury is not here to decide what the truth is of the matter. The jury is here solely to determine whether or not the State has proven its case beyond a reasonable doubt.”
 

 Immediately after the motion was denied, appellant’s counsel gave the defense opening statement, starting with a direct response to the prosecutor’s comment about the jury’s job of judging the credibility of witness informant. The defense
 
 *876
 
 opening statement focused on explaining to the jury why it should not believe informant’s testimony. Defense promised the jury that the defendant would testify to a different version of the events and urged the jury to believe appellant over informant. Defense concluded that appellant would tell them “what actually occurred” and explained to the State’s burden of proof:
 

 You’ll hear, and you’ll hear it from the judge, that the State has the burden of proving everything beyond a reasonable doubt. We went through this yesterday. ...
 

 When you hear the evidence, and you hear all the evidence, and you consider it in conjunction with the instructions of the court and what we talked about yesterday, that it’s always the State’s burden and even the defendant’s testimony only becomes part of what is the State’s evidence to make that determination that the case has been proven beyond a reasonable doubt. When that is all done the verdict that will be returned, ladies and gentleman, as I give this to you is not guilty. Thank you.
 

 A trial court’s decision as to whether to grant a motion for mistrial is reviewed for abuse of discretion.
 
 Freeman v. State,
 
 1 So.3d 373, 377 (Fla. 5th DCA 2009). The power to declare a mistrial should be exercised with care and caution and only in cases of absolute necessity.
 
 Id.
 
 “[A] mistrial should only be declared if ‘the error is so prejudicial and fundamental that it denies the accused a fair trial.’ ”
 
 Lubin v. State,
 
 754 So.2d 141, 143 (Fla. 4th DCA 2000) (citing
 
 Buenoano v. State,
 
 527 So.2d 194, 198 (Fla.1988)).
 

 We find that the trial court did not abuse its discretion in denying defendant’s motion for mistrial because the State’s single reference to “the truth” in opening statement neither insinuated that defendant needed to prove anything, nor invited the jury to convict the defendant for a reason other than the State proving defendant’s guilt by evidence beyond a reasonable doubt.
 

 Appellant relies on our opinion in
 
 Northard v. State,
 
 675 So.2d 652 (Fla. 4th DCA 1996). In that case, we held that a comment made by the prosecutor in opening statement, together with another comment made in closing argument, constituted reversible error because the remarks, considered together, invited the jury to convict the defendant for a reason other than his guilt of the crimes charged. In
 
 Northard,
 
 during opening statement, the State told the jury: “The State is confident that after you review all the evidence that will be presented to you during this trial, you will deliberate and come back with a verdict, a verdict that simply reflects the truth; that the defendant in this case was caught red-handed.” (Emphasis added.)
 

 In its closing the State argued:
 

 If you believe the defendant’s events (sic) the police cannot be telling you the truth, and you’ve got to decide if that’s what they did and they got up here and deliberately fabricated evidence and fabricated testimony for you in order to convict this guy. In order to find him not guilty you’re going to have to believe that. And that’s what your verdict, in order to find him not guilty you’re going to have to believe that the defendant was telling the truth and the officer was lying....
 

 (Emphasis added.)
 

 Those two comments together, each of which specifically instructed the jury how to reach its verdict, improperly stated the legal burden of proof. Considered in context, these two comments together suggested that the jury should reach its ver-
 
 *877
 
 diet based solely on a determination of who was lying and who was telling the truth.
 

 On the other hand, the prosecutor in the case at bar properly discussed the jury’s obligation to determine the credibility of the witnesses’ testimony and did not suggest any improper basis for reaching a verdict. There was no suggestion that the jurors’ determination of who was telling the truth should be the sole basis for the jury’s verdict. The appellant’s reliance on our opinion in
 
 Paul v. State,
 
 980 So.2d 1282 (Fla. 4th DCA 2008), is likewise misplaced. In that case, the State explicitly and improperly shifted the burden of proof by telling the jury during closing argument that “[t]he State has the burden of proving all of these elements beyond a reasonable doubt. And if [the defense attorney] wants to present theories of how she believes this case should play out, there’s got to be some level of proof that Mr. L'aboy was lying.” (Emphasis in original.)
 

 In
 
 Gibbs v. State,
 
 193 So.2d 460 (Fla. 2d DCA 1967), the Second District held that comments made by the judge to the jury panel during
 
 voir dire
 
 in a first degree murder case were improper because the limited explanation of how jurors were to reach a verdict could have resulted in a juror voting to convict the defendant solely because the juror felt that the defendant, in truth, committed the offense, even though his guilt may not have been proven to the exclusion of every reasonable doubt. The
 
 Gibbs
 
 court found that even these improper comments from the bench constituted reversible error
 
 only
 
 when considered in combination with other legal errors, including the court’s overruling defendant’s proper objection to a witness giving his opinion about the guilt of the accused. The court explicitly held that the judicial comments during
 
 voir dire,
 
 standing alone, did not constitute reversible error.
 

 Such comments must be considered in the context of the entire trial. In the instant case, the prosecutor made one reference to “the truth” in opening statement, in the context of a discussion of the credibility of witness informant. Informant and the appellant were expected to, and did, give conflicting versions of the relevant events. It was not improper to utter the word “truth” in the context of the jury’s role as factfinder, particularly where, as here, the comment was immediately followed by a clear explanation of the State’s burden of proof in the defense opening statement, and the jury was properly instructed on the State’s burden of proof by the judge at the conclusion of the case.
 

 We hold that neither the word “truth” nor the topic of witness credibility is prohibited in a criminal trial in proper context.
 

 Affirmed.
 

 STEVENSON and GERBER, JJ., concur.