PER CURIAM.
Dewayne Mickens appeals his convictions for robbery with a firearm, burglary with assault or battery, and false imprisonment with a firearm. He raises three grounds for reversing. We affirm, but write to discuss Mickens’s claim that the trial court abused its discretion in allowing the State to admit DNA evidence that did not conclusively identify him as one of the participants in the robbery.
I.G. stopped at a gas station on his way to work. There were two employees in the store: L.A. and R.V. I.G. was chatting with L.A., who was waiting for the register to start up, when two men entered the store. Both were wearing black attire and sunglasses. Both were African-American males. One wore a ski mask; the other covered his face with a handkerchief. One carried a gun; the other carried mace. The man with the gun ordered everybody to get on the floor. I.G. and R.V. were sprayed with mace and forced to the ground. The man with the gun went behind the counter and demanded L.A. give him the cash from the register. L.A. could not open the register, so he gave the robber a petty cash box with $200 in bills and rolled coins. I.G. felt his wallet taken out of his back pocket. The robbers then left the store.
The robbers’ getaway vehicle, a silver Chevy Monte Carlo, was located and chased until it crashed into a wall. All the occupants of the vehicle fled before officers could arrive at the scene of the crash. The vehicle was registered to Mickens’s cousin. A wallet containing a bank card inside with the cousin’s name on it and two cell phones were recovered from the vehicle. One of the cell phones belonged to Mickens; the other to his cousin. Fingerprints recovered from the passenger side door matched Mickens’s fingerprints. A ski mask, two pairs of sunglasses, and a pepper spray canister were also recovered from the vehicle and tested for DNA.
A week after the robbery, I.G. picked Mickens out of a photo lineup as the robber with the handkerchief on his face. However, at trial none of the three victims were able to identify Mickens as one of the robbers. After Mickens was arrested, he first denied knowledge of the robbery, but then claimed that he heard his cousin was the driver and two other people committed the robbery.
At trial, the State called the person who conducted an analysis on the DNA samples. She testified that the standard practice for her sheriffs office was to compare sixteen genetic markers and then perform a statistical analysis on the results. The DNA of at least two individuals was recovered from the ski mask. Mickens could not be excluded as a contributor to the DNA from the ski mask as the analyst was able to match fifteen of sixteen genetic markers to Mickens. However, the analyst was unable to conduct a complete statistical analysis with six of the markers due to the amount of DNA recovered. *565 Based on a statistical analysis of the remaining nine of the sixteen markers, the analyst testified there was a one in 2600 chance an unrelated African-American male was the source of the DNA on the ski mask instead of Mickens. There was no DNA link to Mickens on any other items recovered from the vehicle.
Prior to trial, Mickens moved in limine to exclude testimony relating to the results of the DNA analysis on grounds the evidence was so inconclusive as to render it irrelevant and unfairly prejudicial. The trial court denied the motion, noting that all relevant evidence is prejudicial. On appeal, Mickens argues the trial court abused its discretion in allowing the DNA analysis to be admitted. Mickens argues the testimony had very little probative value since two of the suspects were related and the DNA statistics applied to unrelated individuals, making the DNA evidence inconclusive. Mickens further argues the testimony of a DNA “match”[1] was extremely confusing and misleading. In Fitzpatrick v. State, 900 So.2d 495, 521 (Fla.2005), our supreme court addressed the trial court’s exclusion of DNA evidence and stated, “This Court has explained that ‘[t]he trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion.’ ” (quoting Heath v. State, 648 So.2d 660, 664 (Fla.1994)). Thus, the standard of review is abuse of discretion. Thigpen v. United Parcel Servs., Inc., 990 So.2d 639, 645 (Fla. 4th DCA 2008).
To support his argument, Mickens relies on United States v. Natson, 469 F.Supp.2d 1253 (M.D.Ga.2007), where the government conducted a paternity test on the victim’s unborn child in order to establish a motive for a murder. The government’s DNA expert testified that a sufficient sample could not be obtained from the fetus, so only five of thirteen genetic markers could be identified. The expert testified that the results of the testing were inconclusive because there was only a 96.3 percent chance the defendant was the father. Id. at 1255. The court held that this evidence was not relevant because the expert could not testify to a reasonable level of scientific certainty that the defendant was the father. Id. at 1258. Therefore, it concluded that the DNA evidence could not assist the trier of fact in determining whether the defendant was the father. Id. The court further held that the testimony was unduly prejudicial because a juror could be easily misled into reaching a conclusion that was not supported by science. Id. at 1259.
Unlike the Natson court, the Florida Supreme Court has been more lenient in allowing the admission of scientific tests which do not conclusively identify a defendant. In Walker v. State, 707 So.2d 300 (Fla.1997), the defendant was charged with murdering a woman who had accused him of fathering a child with her. DNA was recovered from a cigarette butt found in the victim’s car, and testimony was introduced that the DNA was of a type shared by the defendant, the defendant’s brother, and “12.2 percent of the African-American population, 6 percent of the Caucasian population, and 4.8 percent of the Hispanic population.” Id. at 313. The defendant argued this testimony was not relevant to any fact at issue in the case because it did not prove the defendant or his brother were present in the car. The Court rejected this argument, noting that it had previously allowed the admission of blood test evidence which showed only that the de *566 fendant and the tested item had the same general blood type. Any concerns about the probative value of the DNA evidence went to the weight of the evidence and not its admissibility. Id. (citing Mann v. State, 420 So.2d 578, 580 (Fla.1982) and Williams v. State, 143 Fla. 826, 197 So. 562 (1940)).
Finding no error in the admission of DNA evidence and no reversible error on the other two grounds raised on appeal, we affirm the trial court.

Affirmed.

WARNER, TAYLOR and CONNER, JJ., concur.

. The Florida Supreme Court has held it is not reversible error for a DNA expert to refer to a comparison as a "match.” Bolin v. State, 869 So.2d 1196, 1201 (Fla.2004).