DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BERNARD FORBES, ANDRE DELANCY,**
and **ELOYN INGRAHAM,**
Appellants,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D2018-2202, 4D2018-2365, and 4D2018-2397

[March 19, 2025]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Paul L. Backman, Judge; L.T. Case Nos. 06-020315CF10B, 06-20315CF10A, and 06-20315CF10C.

Kevin J. Kulik of Kevin J. Kulik, P.A., Coral Springs, and Hilliard E. Moldof of Hilliard E. Moldof, P.A., Fort Lauderdale, for appellant Bernard Forbes.

H. Dohn Williams, Jr. of Law Office of H. Dohn Williams Jr., Special Public Defender, Fort Lauderdale, for appellant Andre Delancy.

Peter T. Patanzo and Daniel R. Aaronson of Benjamin, Aaronson, Edinger & Patanzo, P.A., Fort Lauderdale, for appellant Eloyn Ingraham.

James Uthmeier, Attorney General, Tallahassee, Jessenia J. Concepcion, Senior Assistant Attorney General, and Sorraya M. Solages-Jones, Senior Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

Three co-defendants appeal their convictions for first degree murder of a Broward Sheriff's Deputy, attempted first degree murder of another Broward Sheriff's Deputy, and conspiracy to commit murder, as well as their consequent thirty year and life sentences. Collectively, they challenge the trial court's rulings on their motions to sever the trials, motions to suppress evidence, and other motions made during trial. We affirm but write only on the court's decision not to sever the trials.

- ***The Shooting***

On a Saturday night in November 2006 at 11:01 p.m., a Broward Sheriff's Deputy stopped a vehicle for a license tag violation in an apartment complex parking lot. The vehicle was occupied by the female driver and the front-seat passenger (Ingraham). The first deputy called for backup and a second deputy soon arrived.

The driver gave the first deputy her cell phone to speak with her father about the license tag. That deputy returned to his vehicle. The second deputy asked Ingraham for identification. Ingraham gave him the false name of Keith Smith and a date of birth. The second deputy walked back to the first deputy's vehicle, where the first deputy was seated and speaking with the driver's father.

Suddenly, a barrage of gunfire erupted. The first deputy was shot twice as he sat in his car. He died at the scene. The second deputy was shot five times, and ultimately positioned himself between the two police vehicles. He radioed shots had been fired at 11:14 p.m. He survived.

Ingraham ran to a nearby apartment where he lived occasionally with the two co-defendants, Forbes and Delancy. A neighbor, Del Prado, heard the gun shots, came out of his apartment, and saw Ingraham run to the nearby apartment and bang on the door. Del Prado watched as Ingraham exchanged something with someone in the apartment.

Ingraham then asked Del Prado to drive the three co-defendants out of the complex. Del Prado agreed. As they were driving out of the apartment complex, law enforcement followed in pursuit. The front passenger Ingraham retrieved a gun from a shirt or towel that he had and turned back toward the law enforcement vehicle, pointing the gun in that direction. Del Prado stopped the car and bailed out. Ingraham jumped in the driver's seat and drove away.

The vehicle crashed. Within minutes, a Subway restaurant surveillance video captured the three co-defendants running away from the crash. Eyewitnesses, who lived near the shooting, observed two males walk toward the traffic stop, and then run back the same way after the shooting.

Law enforcement found a sweatshirt in the backseat of Del Prado's vehicle that contained gunshot residue and Forbes' DNA. A loaded .40 caliber Glock magazine that fit the murder weapon was found inside the sweatshirt's pocket.

2

Cell phone records revealed that Ingraham had been on the phone with Forbes and/or Delancy immediately before the shooting. The next day, law enforcement tracked Ingraham's cell phone to a motel. When law enforcement arrived at the motel, they observed Ingraham and his girlfriend leaving in Ingraham's car.

Law enforcement stopped the car and arrested Ingraham. Ingraham told law enforcement that Forbes and Delancy were in the motel room and had guns. Law enforcement arrested Forbes and Delancy in the motel room without incident.

A jury convicted the three defendants of murder in the first degree, attempted murder in the first degree, and conspiracy to commit murder. The jury decided against the death penalty. The trial court sentenced the defendants to life for the murder and attempted murder charges and thirty years for the conspiracy charge.

From their convictions and sentences, the three defendants appeal. Each defendant argues the trial court erred in denying their respective and collective motions to sever the trials, multiple motions to suppress, motions for judgment of acquittal, and other trial motions. We have reviewed the voluminous briefs and lengthy record and affirm on all issues. We write only on the trial court's decision to deny their motions to sever.

- ***The Analysis***

Each defendant makes multiple arguments on their respective motions to sever the trials. Their reasons for requesting a severance are listed in the chart below.

| Forbes | Delancy | Ingraham |
|---|---|---|
| Need to admit Ingraham's involvement in inextricably intertwined criminal conduct | Same as Forbes (inextricably intertwined criminal conduct) | Antagonistic defenses to Forbes |
| Delancy's strategy change during opening adversely affected his defense | Need to admit Forbes' statement concerning his phone call with Ingraham | Trial court improperly admitted DNA evidence |
| | | Required for a fair trial |

Forbes

3

Forbes argues a joint trial prevented him from introducing Ingraham's involvement in prior murders and a robbery.[1]  He also argues Delancy's "mere presence" defense made in his opening came as a surprise and adversely affected his defense.

The State responds the other crime evidence against Ingraham was irrelevant and inadmissible.  The State asserts no connection existed between the other murders and the subject shootings.  The State further responds that any agreement between Forbes and Delancy to maintain that Ingraham was the only shooter was not affected by Delancy's unexpected statement in opening that he was merely present at the scene.

<u>Delancy</u>

Delancy argues his "mere presence" defense required the admission of Forbes' statement during an interview about Ingraham's phone call just prior to the shooting.  Delancy argues, as did Forbes, that he should have been able to admit evidence of Ingraham's involvement in the other crimes.

The State repeats its response that the other crimes evidence was irrelevant and inadmissible.  The State also responds that Forbes' statement in the interview was self-serving hearsay and inadmissible.  *See* § 90.801(b), Fla. Stat. (2023).  According to the State, even if the jury had heard Forbes' repetition of Ingraham's statement, it would not have affected Delancy's "mere presence" defense.  Lastly, the State responds Delancy's "mere presence" defense is unpreserved because it was not argued in his motions to sever the trials.

<u>Ingraham</u>

Ingraham argues that Forbes made prejudicial statements against Ingraham in his opening and called witnesses to prove Ingraham was the only shooter.  Ingraham further argues that Forbes' counsel cross-examined the DNA experts in such a way as to inculpate Ingraham.  Ingraham claims this was done improperly by suggesting that he "cannot be excluded" from the DNA testing without a statistic that would qualify it as more probative than prejudicial.

---

[1] The State theorized Ingraham called Forbes and Delancy during the traffic stop and directed them to come to the scene and shoot the deputies because Ingraham knew he was a suspect in prior crimes and feared arrest.

The State responds that Ingraham's DNA argument was unpreserved as it was not argued in his motions to sever. Ingraham acknowledges the DNA issue did not arise until Forbes' cross-examination of the DNA witnesses during trial. However, he indicates he did move for a severance at that time and requested a mistrial.

The State further responds that a severance is not required just because a co-defendant places the blame on a co-defendant. All that is required is that Ingraham receive a fair trial, and that is what he received. While Forbes did argue he was not involved in the shooting and Ingraham was the shooter, Forbes' argument was consistent with the State's theory of the case. And Ingraham had the opportunity to cross-examine all the witnesses and present his defense without material difficulty. *Mickens v. State*, 121 So. 3d 563, 565 (Fla. 4th DCA 2013).

  o ***The Law***

We review a trial court's denial of a severance for an abuse of discretion. *Lines v. State*, 143 So. 3d 1018, 1019 (Fla. 4th DCA 2014) (citing *Williams v. State*, 567 So. 2d 9, 9 (Fla. 4th DCA 1990)).

"[D]ecisions on the admission of evidence" are reviewed "for an 'abuse of discretion, limited by the rules of evidence.'" *Adams v. State*, 277 So. 3d 249, 254 (Fla. 4th DCA 2019) (quoting *Lucas v. State*, 67 So. 3d 332, 335 (Fla. 4th DCA 2011)).

<u>Forbes' and Delancy's Joint Argument</u>

Both Forbes and Delancy complain they were deprived of a fair trial because they were unable to present other crimes evidence regarding Ingraham's involvement in prior murders and a robbery. We disagree.

"If a defendant's purpose is to shift suspicion from himself to another person, evidence of past criminal conduct of that other person should be of such nature that it would be admissible if that person were on trial for the present offense." *State v. Savino*, 567 So. 2d 892, 894 (Fla. 1990). When a co-defendant attempts to identify the perpetrator of the crime being tried by use of past crimes evidence, our supreme court has "required a close similarity of facts, a unique or 'fingerprint' type of information, for the evidence to be relevant." *Id.*

Those characteristics were not present in the other crimes evidence sought to be admitted. Here, neither a similarity of facts, nor "fingerprint" type of information possessed by the other crimes evidence, existed. In

5

short, the evidence lacked relevance. Given the discretion provided to the trial court, we find no error in either the trial court's ruling that the other crimes evidence was inadmissible or ultimately its denial of the defendants' motions to sever on this basis.

## Forbes' Arguments

Forbes alternatively argues that Delancy's surprise "mere presence" defense made in his opening statement somehow prejudiced Forbes' defense because it placed Delancy at the shooting scene. Regardless of whether Forbes and Delancy had previously decided to remain united in blaming Ingraham for the shooting, nothing in Delancy's statement implicated Forbes.

Because this basis for a severance did not occur until trial, it cannot be the basis for suggesting the trial court erred in denying the pretrial motions for severance. It was however raised by Forbes at trial, so the issue is preserved. But, we agree with the trial court that Delancy's "mere presence" defense did not prejudice Forbes. The trial court did not err in denying the motion to sever on this basis.

## Delancy's Arguments

Delancy argues that he was prevented from admitting a statement made by Forbes in an interview about his phone conversation with Ingraham because the severance was denied. Once again, we disagree.

In a video-taped interview, Forbes stated when Ingraham called him during the traffic stop, Ingraham said that two deputies were there and had Ingraham hostage. Ingraham told Forbes "they were getting ready to lock up. . . . They trying to get me up." The trial court excluded this statement.

"[T]he admissibility of [evidence establishing reasonable doubt] must be gauged by the same principle of relevancy as any other evidence offered by the defendant." *Rivera v. State*, 561 So. 2d 536, 539 (Fla. 1990). At trial, the State argued Ingraham's call was the catalyst for the shooting and the plan developed during the call. Delancy suggests the jury should have been told about Forbes' statement to demonstrate Ingraham's concern about being a suspect in two prior murders and a robbery.

As the trial court explained, "if a defendant moves for a severance of defendants on the ground that an oral or written statement of a codefendant makes reference to him or her but is **not admissible** against

6

him or her," the court must determine if the State is going to admit the evidence. The State had the option of either not admitting the evidence, having a joint trial with redactions of the moving defendant, or severing the trials. *See* Fla. R. Crim. P. 3.152(b). Here, the State opted not to admit the evidence, eliminating the need to sever the trials.

The statement was also inadmissible as hearsay. As the trial court expressed, Forbes' statement was not sufficiently inculpatory to be admissible as a statement against interest. Therefore, the trial court correctly excluded the statement based on hearsay. A severance would not have affected the admissibility of Forbes' statement. The trial court correctly denied the motion to sever based on the inadmissibility of the statement.

## Ingraham's Arguments

Ingraham's reasons to sever the trial were different from those of Delancy and Forbes. Ingraham first argues the co-defendants' defense was antagonistic to him. But "[t]he object of the [severance] rule is not to provide defendants with an absolute right, upon request, to separate trials when they blame each other for the crime. Rather, the rule is designed to assure a fair determination of each defendant's guilt or innocence." *McCray v. State*, 416 So. 2d 804, 806 (Fla. 1982).

Simple hostility or a defendant attempting to shift the blame to another does not require a severance. *Id.* The trial court did not err in denying Ingraham's motion to sever on this basis.

Next, Ingraham argues that Forbes' cross-examination of the DNA experts led the jury to believe that Ingraham could not be excluded from the DNA samples. Admittedly, Ingraham did not make this argument in his pre-trial motions to sever because the cross-examination occurred during the trial. He cannot therefore argue any error in the trial court's rulings on his pre-trial motions to sever on this basis. And because the DNA evidence was admissible generally, the trial court correctly denied the motion to sever at trial.

Our supreme court "has been more lenient in allowing the admission of scientific tests which do not conclusively identify a defendant." *Mickens*, 121 So. 3d at 565. In *Mickens*, we explained that our supreme court "had previously allowed the admission of blood test evidence which showed only that the defendant and the tested item had the same general blood type." *Id.* at 565-66*; see Walker v. State*, 707 So. 2d 300, 313 (Fla. 1997). Any

concerns about the probative value of the DNA evidence goes to the weight of the evidence and not its admissibility. *Mickens*, 121 So. 3d at 566.

Here, the trial court did not err in allowing Forbes' cross-examination of the DNA expert nor in admitting the DNA expert's testimony. Thus, the admission of this evidence did not support Ingraham's motion to sever at trial.

For the foregoing reasons, we affirm.

*Affirmed.*

DAMOORGIAN and GERBER, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***